IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

CURTISS OSTOSH

                Plaintiff, a Michigan Resident       CASE NO.

And                                        HON,

HARVEST TIME CHRISTIAN FELLOWSHIP

                Plaintiff, a Michigan Domestic
                Ecclesiastical Corporation

--VS--

CITY OF WARREN MICHIGAN
                Defendant, Municipal Entity

and

LORI STONE,

                Mayor of Warren, Individually

                in her individual and professional capacity

and

DOES 1-50

                Defendants.

_____/

**COMPLAINT FOR VIOLATION OF RIGHTS UNDER THE RELIGIOUS LAND USE AND INSTITUTIONAL-IZED PERSONS ACT (42 USC 2000 CC), THE U.S. AND MICHIGAN CONSTITUTIONS AND FOIA (5 USC 552)**

**PACIFIC JUSTICE INSTITUTE**

By: Dave Peters, Staff Attorney (P48648)

Attorney for Plaintiff

PO Box 51787

Livonia, Michigan 48141-1787

Email: dpeters@pji.org

Phone: (734) 732 – 4050/  (916) 857 -6900

_____/

– 1 –
COMPLAINT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**COMPLAINT**

Now comes the above-named Plaintiffs, by counsel, PACIFIC JUSTICE INSTITUTE by their attorney DAVID C. PETERS II (P48648) and for its Complaint, alleges as follows:

**INTRODUCTION**

1. Plaintiff, Harvest Time Christian Fellowship Church (the "CHURCH"), is a Christian religious institution located at 8204 East 9 Mile Road in the City of Warren, State of Michigan.

2. The CHURCH is a traditional religious ministry with regular religious services and an auxiliary ministry operating a food pantry which feeds approximately 70,000 poor, vulnerable, and disenfranchised people every year.

3. The CHURCH is located in a blighted area of Macomb County, in the City of Warren, just North of the City of Detroit.

4. The CHURCH has been continuously led by Plaintiff and Pastor Curtiss OSTOSH for more than 17 years and both the CHURCH and food pantry were previously operated by another team of pastors and religious adherents for a total period of more than 34 years at this current location.

5. The duration of the food pantry and Christian ministry at the CHURCH (34 years) is some 12 years longer than the existence of the City Building Codes in Warren which were enacted pursuant to the Michigan Construction Code Act amending it in 2004 (22 years) to require all communities, including Warren, to adopt and enforce two specific uniform codes: the Michigan Building Code and the **Michigan Residential Code.**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

6. This ministry of the CHURCH has filled a critical need to feed the poor and hungry in the County of Macomb, Oakland County, and adjacent Wayne County and to share the Gospel and hold religious services.

7. There are very few food ministries in this area of Michigan that can reach both southern Macomb County and Wayne County and the CHURCH has been a blessing to the community.

8. In August 2023 the CHURCH and Pastor OSTOSH were given a Service Award by the CITY of Warren for their outstanding service to the community (**EXHBIT 1:  LETTER FROM CITY**).

9. Unfortunately, in November 2024, just 5 months after the CITY acknowledged the contributions of Harvest Time, the election of new mayor, Defendant LORI STONE, in November 2023, heralded a major shift in the CITY'S approach.

10. Under the new Mayor, the CITY chose to ignore federal law, the history of good works by the CHURCH, and the Michigan and federal constitutions, and began a targeted campaign of harassment and government overreach against the CHURCH and Pastor OSTOSH.

11. Despite the fact the CHURCH had operated in the same manner for approximately 34 years, without significant complaints, and had just been given a Civics Achievement award by the CITY,  the CITY under the new mayor suddenly turned hostile, bombarding the CHURCH with a series of accusations that the CHURCH'S use of its own property and trucks by partner entities, which had been permitted unchanged for 34 years, violated the CITY'S Zoning Code, and repeatedly taking biased, code enforcement action against the CHURCH for blight conditions while leaving alone adjacent properties, properties across the street, and properties just down the street in even worse blighted conditions as alleged.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

12. The enforcement action targeted against the CHURCH included numerous Code violation actions brought by the CITY.

13. Beginning in 2024, Pastor OSTOSH was repeatedly hauled into the local Municipal Court, for "Code Violations."

14. Plaintiffs believe the source of the code violation charges originate in the mayor's office.

15. Employees of the CITY Building department have admitted on more than one occasion that they were "being pressured" by the mayor's office to "do something" about the CHURCH.

16. Just prior to the City beginning the biased enforcement against the CHURCH, Pastor OSTOSH posted an unflattering but protected portrait of the mayors anti-Christian LGBTQ agenda on social media (**EXHIBIT 2:  FACEBOOK POST BY PASTOR OSTOSH**).

17. Immediately after his post, individuals, mostly easily identifiable as LGBTQ females, began parking on the street outside the CHURCH and were observed watching the CHURCH parking lot and taking notes inside their vehicles.

18. Almost immediately after this was noticed, "anonymous complaints" about the CHURCH suddenly began to be made to the CITY of Warren and other Government Entities.

19. Under the acquiescence and direction of Mayor LORI STONE, one or more LGBT groups, allied with her office, and conspired to make false claims about the CHURCH to the CITY, and other Government Entities.

20. Numerous claims were subsequently made, investigated, and disproven.

21. One complainant alleged the pantry was serving "rotted food" which prompted a State investigation with the Department of Agriculture that quickly disproved the false claim. **(EXHIBIT 3: LETTER FROM DEPARTMENT OF AGRICULTURE EXHONERATIONG PLAINTIFFS AND REFUTING THE CITY CLAIMS).**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

22. However, when it came time for the CITY of Warren to investigate the false claims, under the direction of Mayor STONE, they eagerly and unanimously sided with the anonymous LGBT group(s) at every opportunity.

23. The CITY commenced a focused and obviously targeting operation against the CHURCH and began citing the CHURCH and Pastor OSTOSH for City code violations.

24. The code violations were essentially all the same and included allegations that the CHURCH was leaving out uncovered food, plastic debris, carboard, and other "rodent harborage."

25. Inspectors from the CITY were sent out week after week on Wednesday morning and other days to take pictures and find evidence of improper food storage.

26. On Wednesdays, a food truck comes to fill the pantry of the CHURCH and food distribution center for that week, and this is the precise date and time that CITY inspectors repeatedly chose to take pictures of the unloading operations.

27. After gathering their "evidence" the CITY inspectors then refused to take pictures of the condition of the property once the truck had left and everything was unloaded and cleaned up.

28. The CITY and the City inspectors deliberately ignored all clean-up efforts following food unloading in order to make a false case against the CHURCH and Pastor OSTOSH.

29. The CITY and City inspectors deliberately ignored adjacent properties that had uncovered trash, the continual presence of uncovered food debris (rather than plastic debris), rodent harborage, overturned trash containers and, in general, far less hygienic and far more unsafe conditions **at all times** than the CHURCH only showed during loading and unloading operations.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

30. The CITY then presented the photographs in isolation and ambushed the Plaintiff at trial with the pictures, without giving the Plaintiff OSTOSH an opportunity to provide rebuttal evidence and over the objection of Plaintiff's counsel.

31. Despite the fact the CHURCH was in better condition than adjacent and nearby properties, there has been no Code enforcement of the adjacent and nearby properties that are in worse condition than the CHURCH.

32. The CITY also conducted their own food drives near the CHURCH and pictures of the event demonstrate significantly more "rodent harborage" than was ever present at the CHURCH and further demonstrated the unreasonable standards imposed on Plaintiffs and the impossibility of the new demands of the mayor, Building Department and the CITY of Warren.

33. The CITY of Warren has been and continues to deal with the CHURCH in bad faith and in violation of federal and State law.

34. In particular, the CITY of Warren has targeted the CHURCH for enforcement action under a local code standard claiming that the CITY only needs to prove claims of CHURCH land use violations by a "preponderance of evidence."

35. In fact, the federal Religious Land Use and Institutionalized Persons Act (RLUIPA)[1] statute mandates, inter alia, that governments cannot treat religious institutions less favorably than other institutions and cannot impose land use regulations and restrictions that substantially burden religious exercise without showing a **compelling State interest and the least restrictive means of imposing them.**

36. The Municipal Court in the CITY of Warren has repeatedly ignored the relevant provisions of federal law even after counsel notified it of the same and has repeatedly imposed disruptive

---

[1] 42 USCS 2000cc-1 (LexisNexis, Lexis Advance through Public Law 119-68, approved December 29, 2025, with a gap of Public Law 119-60)

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

penalties on the CHURCH with the clear intention of interfering with or terminating the CHURCH ministry.

37. Defendants' actions heavily burdened the CHURCH and pastor and violated the religious exercise of parishioners and participants in the ministry.

**PARTIES, JURISDICTION AND VENUE**

38. Harvest Time Christian Fellowship ("THE CHURCH") is a Christian church located in South Warren, Michigan at 8204 E. 9 Mile Rd, Warren, MI 48089, that operates as a 501(C) (3) non-profit religious organization.

39. The CHURCH has been operating for over 34 years as a house of Worship and food pantry and has been operated by Plaintiff Pastor OSTOSH for more than 17 years.

40. At all times herein mentioned, the CHURCH was, and is, "a religious assembly or institution" for the purposes of RLUIPA (42 U.S.C. § 2200cc *et seq.*).

41. The CHURCH has an interest in the property which is the subject of this litigation in that it: (1) Holds title to the above listed property; (2) pays the mortgage on the above listed property; (3) submits applications to local governments for development and use of the property; (4) plans, executes and pays for the development of the property; and (5) seeks to occupy and use the property for its religious activities.

42. Defendant City of Warren ("The CITY") is a city located in Macomb County, Michigan, and is a Michigan Municipal Corporation organized under the laws of the State of Michigan, responsible for zoning, enforcement, and ordinances among other activities.

43. The CITY is a recipient of federal funds.

44. At all times described herein, the CITY acted in a manner *ultra vires* to the law and under color of state law and municipal law.

– 7 –
COMPLAINT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

45. The CHURCH is not aware at this time of the true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1 through 50, inclusive who are known to have conspired with the CITY and other officials, and or engaged in other violations and unlawful plans to violate the statutory and constitutional rights of the CHURCH but expects such names to become known during the course of Discovery.

46. The CHURCH is informed and believes and thereon alleges that each of the fictitious named Defendants is in some way responsible for or participated in, or contributed to, the matters, and things complained of herein, and is legally responsible in some manner, therefore.

47. The CHURCH will seek leave to amend this Complaint when the true names, capacities, participation, and responsibilities have been ascertained during the course of discovery or as otherwise may become available.

48. This civil rights action raises federal questions under the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C § 1983, the Religious Land and Use Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*, the Michigan Constitution and the Michigan Freedom of Information Act (MCLA 15.231).

49. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this case arises under federal law, specifically RLUIPA and the U.S. Constitution.

50. This court has pendant or supplementary jurisdiction over the Michigan FOIA act (being MCLA 15.231) pursuant to 28 USCS 1367 (LexisNexis, Lexis Advance through Public Law 119-68, approved December 29, 2025, with a gap of Public Law 119-60).

51. This court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–02 and Federal Rules of Civil Procedure 57.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

52. Venue is proper in the Eastern District of Michigan, Southern Division pursuant to 28 U.S.C. § 1391(b), as the events giving rise to this action occurred in the CITY of Warren, Michigan and because all parties are located in the CITY of Warren which is within the jurisdiction of the Eastern District of Michigan Southern Division and because there are federal questions.

**GENERAL ALLEGATIONS**

I. **Since 2006, the CHURCH Has operated a Food Ministry to Serve the Local Macomb County Community.**

53. The CHURCH was founded by the work of three pastors and has served the South Warren Community since September 18, 1991.

54. The CHURCH began the "Food Ministry" as an expression of their sincere religious beliefs in 1996.

55. The Food Ministry is an extension of the dedication of the CHURCH to sharing the Gospel with the community, The Food Ministry's religious mission is to "help and provide for every necessity expressing the love and purpose of God for everyone." (**EXHIBIT 4:  CHURCH MISSION STATEMENT**).

II. **CHURCH Mission to Feed the Needy**

56. The CHURCH'S religious beliefs stem directly from Jesus' teachings in Matthew 25:35-40, which states: "For I was hungry, and you fed me.  I was thirsty, and you gave me a drink. I was a stranger, and you invited me into your home. I was naked, and you gave me clothing. I was sick, and you cared for me. I was in prison, and you visited me."

Similar teachings appear throughout Scripture: "It is a sin to despise one's neighbor but blessed is the one who is kind to the needy . . . whoever is kind to the needy honors God." *Proverbs* 14:21, 31 (New Int'l Version) ("NIV"). "He upholds the cause of the oppressed and gives food to the hungry." *Psalm* 146:7 (NIV). "Suppose there is a righteous man who does

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

what is just and right . . . He does not commit robbery but gives his food to the hungry and provides clothing for the naked." *Ezekiel* 18:5, 7 (NIV).

57. Similar teachings appear throughout Scripture: "It is a sin to despise one's neighbor but blessed is the one who is kind to the needy . . . whoever is kind to the needy honors God." *Proverbs* 14:21, 31 (New Int'l Version) ("NIV"). "He upholds the cause of the oppressed and gives food to the hungry." *Psalm* 146:7 (NIV). "Suppose there is a righteous man who does what is just and right . . . He does not commit robbery but gives his food to the hungry and provides clothing for the naked." *Ezekiel* 18:5, 7 (NIV).

58.  Among its other religious activities, the CHURCH carries out various ministries to help needy members of the local community as a direct result of its religious beliefs – including its religious mission and numerous teachings for the Holy Bible.

59.  As a Christian church, the CHURCH follows the teachings of the Holy Bible, including, as especially relevant here, the injunction to care for the poor and needy and to serve "the least of these."  *Matthew 25:40*.

60.  This is why the CHURCH'S primary mission is "Pursue God, Embrace Helping People."

61.  Indeed, the Holy Bible specifically and repeatedly directs faithful Christians like the CHURCH'S members to care for the poor and needy out of compassion and mercy for those who are experiencing significant misfortune and hardship.  *See, e.g., Deuteronomy* 15:10 -11; *Isaiah* 58:6-8,  *Proverbs* 19:17, 21:13, 28:27 & 29:7;  *Leviticus* 25:35-36.

62.  Deuteronomy 15:10-11 admonishes that the faithful must "[g]ive generously to [the poor] and do so without a grudging heart," and be "openhanded toward…[the] poor and needy."

63.  Isaiah 58:6–8 compels the CHURCH to love all those who seek its support and to provide shelter to those in need: "Is not this the kind of fasting I have chosen: to loose the chains of

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

injustice and untie the cords of the yoke, to set the oppressed free and break every yoke? Is it not to share your food with the hungry and to provide the poor wanderer ["homeless," according to the New Living Translation] with shelter—when you see the naked, to clothe them, and not to turn away from your own flesh and blood? Then your light will break forth like the dawn, and your healing will quickly appear; then your righteousness will go before you, and the glory of the LORD will be your rear guard."

64. Proverbs 19:17 teaches that "whoever is kind to the poor lends to the LORD, and he will reward them for what they have done."

65. Proverbs 21:13 provides that "[w]hoever shuts their ears to the cry of the poor will also cry out and not be answered."

66. Proverbs 28:27 provides that "those who give to the poor will lack nothing, but those who close their eyes to them receive many curses."

67. Proverbs 29:7 confirms that "[t]he righteous care about justice for the poor, but the wicked have no such concern."

68. Leviticus 25:35–36 requires that "[i]f any of your fellow Israelites become poor and are unable to support themselves among you, help them as you would a foreigner and Stranger, so they can continue to live among you. Do not take interest or any profit from them, but fear your God, so that they may continue to live among you."

69. For nearly 34 years, the CHURCH has distributed food, clothed, sheltered, and supported tens of thousands of people in the City of Warren every year.

70. In addition to hosting food distributions throughout the week, the CHURCH serves approximately 600 families every week, which equates to the distribution of approximately 160,000 pounds of food every month, feeding approximately 70,000 hungry people every year.

- 11 -
COMPLAINT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

71. The CHURCH is committed to serving everyone with compassion, generosity and respect. Additionally, the CHURCH sometimes donates excess food and supplies to other churches or community programs with similar mission convictions.

72. The CHURCH does not charge any fee to those receiving free meals and free food.

**CHURCH'S HISTORICAL RELATIONSHIP TO THE CITY**

73. For most of the CHURCH'S history, the CHURCH and its Food Ministry had a positive working relationship with the CITY, which had never complained about the Food Ministry's operations nor informed the CHURCH that its use of trucks, refrigerators, and containers, on its property violated the City Code.

74. In fact, not only was the city aware of the CHURCH's Food Ministry and use of trucks, but it actively supported it until the new Mayor STONE decided that she would use her power as a government official to attack the CHURCH.

75. The CHURCH maintains State approved and required sanitation and hygienic requirements as noted by multiple State inspections.

76. The CITY- including but not limited to the City Council, Mayor, Planning Commission, Board of Zoning Adjustments, City Manager, Development Services Department, and Engineering and Transportation Department – has the authority to regulate zoning and land use, Property Maintenance and Blight, Abandoned Vehicles, Building Codes, and Noise Ordinances.

77. In November 2023, a new mayor was elected in the CITY of Warren.

78. At first, the relationship between the CITY and CHURCH remained without incident.

79. Beginning in or around early 2024, following Pastor Curtiss's public participation as a city housing commissioner member and candidate for state representative, and the above-

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

mentioned Facebook Post, the CITY began to issue citations, threats, and harassment against the CHURCH and Pastor Curtis regarding alleged zoning and ordinance violations.

80. Pastor OSTOSH is a very active individual within his community.

81. He attends council meetings and was an opposing Candidate for the new Mayor's vacated seat, along with his wife who ran as a Democrat.

82. Ultimately he attracted the attention of the community as well as the mayor's attention.

83. Pastor OSTOSH is also well known within the community for his biblical Christian views.

84. He believes in the sanctity of life, he is against abortion, he believes God is love, and love is not love.  He also strongly believes that marriage is between a man and a woman, and Pastor OSTOSH is not shy in sharing these beliefs.  With this he began to attract more attention from the mayor, as well as becoming a target of harassment for him and CHURCH.

85. Shortly before the LGBT group began harassing the CHURCH with constant complaints, and immediately before the CITY began inequitable enforcement of the CHRUCH,  Pastor OSTOSH posted on the CHURCH social media account a message and a picture saying: "Some people don't consider this a baby, but some consider this a female."  Within the post there was a picture of a fetus, alongside President Biden's appointed Health and Human Resources official Rachel Levine, who was the assistant secretary for this agency (**EXHIBIT 2**, Id).

86. Before this post was made, the Pastor and CHURCH had minor violations from Blight Control and the CITY, which the Pastor and CHURCH respected and corrected the minor and reasonable enforcement actions.

87. After the post was made, and after the election of the New Mayor, LORI STONE, a major change occurred, the CITY began to cite CHURCH for numerous violations.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

88. The CITY inspectors began to harass the CHURCH on a daily basis.

89. The CITY confiscated items that had been on the property for 10 years without notice and then failed to provide any information to Plaintiff on how they could recover the items taken by the CITY in violation of the local City Code and the due process required by the United States and Michigan Constitutions.

90. The CITY mayor began to attack the CHURCH from all sides and CITY inspectors were sent to the CHURCH numerous times, under the direction of the CITY mayor.

**CITY CONFISCATION OF CHURCH ASSETS**

91. The CITY continued to send Blight Control out to the CHURCH to confiscate bicycles, which belonged to homeless individuals that attended the CHURCH, and food used for the CHURCH pantry.

92. The CITY ordered Blight Control to confiscate lawn mowers from CHURCH property and then auctioned them, or disposed of them, without notice to the CHURCH in violation of the Warren City Code and well established principles of State and federal Due Process.

93. The CITY also confiscated BBQ pits, dumpsters, lawn furniture, and various other motor vehicles, power tools, and other items and then ordered the CHURCH to take down a tent that was put up with the CITY'S permission years ago with code enforcement and zoning sent out to make sure the tent was taken down.

94. During the spring of 2024, Blight Control was sent out to the CHURCH to continue to give warnings and continue with their confiscation of property that was on CHURCH property.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

95. On or about May 8, 2024 CITY zoning towed two vehicles, a van, a refrigerated van, and an 18-foot trailer, which were all on the property for over 10 years. All property was owned and titled to the "CHURCH."

96. At this time the City also impounded a dumpster that was on the CHURCH property.

97. The head code enforcement officer in the City of Warren had told counsel and Plaintiff that he should obtain a dumpster and this would solve all his problems and when the Church obtained a dumpster, the city acted in bad faith to seize it even though the head inspector had advised Plaintiff to obtain it, years prior.

98. The CITY's zoning department sent out police officers, and others, as they took the CHURCH'S property, and the CHURCH was again not provided notice on the auction, or how to obtain their property back.

99. The CITY has done these confiscatory actions multiple times to the CHURCH.

100. The CITY has unlawfully confiscated items valued at hundreds of thousands of dollars in replacement value in total from the CHURCH.

101. Despite the wild claims about the CHURCH and the food pantry, the Michigan Department of Agriculture found no violations and the CHURCH was not cited in State inspections.

**UNLAWFUL ENFORCEMENT ACTIONS BY THE CITY**

102. Beginning in or around early 2024, following Pastor Curtiss's public participation as a city housing commission member and candidate for state representative, his Facebook Post(s), and his vocal, Christian based opposition to the mayor's open LGBT agenda, the City began to issue citations, threats, and harassment against CHURCH and Pastor Curtiss regarding alleged zoning and ordinance violations.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

103. The enforcement actions by the CITY were unlawful, and retaliatory, and taken in violation of the Plaintiff's rights to Free Speech and the right to practice his religion, and targeted at a CHURCH, by a government entity, under color of law, without there being a compelling State interest or utilizing the least restrictive means to accomplish the CITY goals.

104. These actions by the CITY are in violation of the First Amendment (Free Speech and Practice of Religion clauses) to the United States Constitution, and Article I Section 4 (Freedom of Religion), and Section 5 (Freedom of Speech) of the Michigan Constitution.

105. The enforcement actions followed Pastor OSTOSH'S public religious and political expression, including his pro-life views, defense of Biblical marriage, and opposition to certain social policies by the Mayor of Warren all took place in response to the Plaintiff's exercise of Free Speech and the Practice of Religion.

106. In particular, after Pastor OSTOSH shared an online post expressing his pro-life stance and contrasting the image of a fetus with comments about public officials he was publicly labeled a 'racist, bigot, and insensitive,' by some in the LGBT community who decided they would target his Church and religious beliefs (**EXHIBIT #2:  PASTOR CURTISS FACEBOOK POST).**

107. Pastor OSTOSH is also well known within the community for his biblical Christian views, he believes in the sanctity of life, he is against abortion, he believes God is love, and love is not love.

108. He also strongly believes that marriage is between a man and a woman.

109. Pastor OSTOSH is not shy in expressing his First Amendment rights of religious liberty and free speech to publicly share his belief in the Gospel and the teaching of Holy Scripture.

110. Pastor OSTOSH believes he should be permitted to freely express his belief in the Gospel and the teachings of Holy Scripture without fear of retaliation by the government.

- 16 -
COMPLAINT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

111.    The CITY'S enforcement actions against CHURCH and Pastor OSTOSH are not neutral and are not generally applicable, but rather targeted based on religious Viewpoints and political expressions.

112.    The CITY is not permitted to target a church for enforcement unless they demonstrate a compelling State interest, neutrality, and that there are no less restrictive means of achieving their goals.

113.    The CITY has targeted the CHURCH and is not neutral, does not have a compelling State interest, and even if they did it has not employed the least restrictive means to achieve their interest.

114.    Further, the CITY has openly targeted the Plaintiff religious institution and Pastor in violation of Free Speech, and Freedom of Religion.

115.    The CITY has engaged in selective Code Enforcement against the Plaintiff Pastor and his CHURCH and treated them differently and more strictly than other similarly situated entities located nearby, across the street, or adjacent to the CHURCH.

**PLAINTIFF'S FOIA REQUESTS TO THE CITY OF WARREN**

116.    Plaintiff has submitted Three (3) FOIA requests to the city in an attempt to tie down the dates and times of the various enforcement actions and tickets against the Plaintiff, as well as determining the status and existence of similar code violation enforcement (**EXHIBIT #5: FOIA REQUEST SUBMITTED BY PLAINTIFF TO CITY).[2]**

117.    The first FOIA request (25-834) was "granted" (Due Date:  August 1, 2025 and  was then returned to Plaintiff completely and entirely redacted (**EXHIBIT #6:  COPY OF CITY RESPONSES)**.

---

[2] https://cityofwarrenmipolice.nextrequest.com/requests/26-879 is the link to the FOIA portal Plaintiff used to submit his requests.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

118.    The second FOIA request (24-2235) was "granted" (Due Date: January 28, 2025) and a letter was sent requesting a deposit (**EXHIBIT #7:  LETTER REGARDING FOIA)** but there was no number or required amount put on the required deposit and, Plaintiff expecting another fully redacted document decided not to pay the useless deposit or pursue an appeal.

119.    The 3rd request (26-879) was sent on March 26, 2026 with a complete denial on March 27, 2026 on the grounds the request was unduly burdensome even though it is almost exactly the same request that was previously granted (See 2nd FOIA Request, Supra).

120.    Plaintiff did appeal this 3rd FOIA request on the grounds the request was not unduly burdensome on April 1, 2026.

121.    The CITY DENIED Plaintiff's appeal and Plaintiff brings the present case alleging violation of FOIA.

122.    The material requested was of public interest and included public records that should have been provided but were not.

### III.    Defendants Have Escalated Their Intimidation Crusade Against the Church by Threatening and Extracting Civil and Criminal Penalties on its Pastor.

123.    Shortly after taking office, the mayor's office telegraphed to the CHURCH that it could no longer support the CHURCH.

124.    The main church building is first surrounded by a parking lot at the front adjoining busy 9 Mile Road and an undeveloped lawn with an easement at the rear of the property **(EXHIBIT #8:  PICTURE OF CHURCH)**.

125.    The CITY of Warren controls its own zoning through the Public Service Department.

126.    This department is responsible for overseeing and coordinating the activities of the following divisions:

        1. Building – permits, inspections, zoning, city certifications and certificate of

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

certificate of occupancy.

2. Department of Public Works – Year – round road maintenance, city signage, storm sewers, vehicle maintenance for all city vehicles.

3. Property Maintenance – Addresses issues relating to weeds, grass over 6" debris, unmaintained property and issues relating to street lights.

4. Sanitation -Garbage pick-up, yard waste pick-up, curbside recycling, and operation of the drop off center.

127.    This department is also responsible for coordinating blight sweeps with the divisions involved.

128.    The head contact for the Public Service Department is David Muzzarelli.

**THE CHURCH CARRIES OUT VARIOUS MINISTRIES TO HELP NEEDY MEMBERS OF THE LOCAL COMMUNITY BECAUSE OF ITS RELIGIOUS FAITH/RELIGIOUS MISSION**

129.    Since 2006, the CHURCH has operated a robust Food Bank Ministry on its property as a practical way to help meet the immediate needs in the surrounding community by supplying essential food to needy individuals.   See **EXIBIT 9:  PHOTOGRAPHS OF THE FOOD BANK MINISTRY**).

130.    Since its inception in 2006, the CHURCH'S Food Bank Ministry has grown rapidly from simply distributing essential food and goods to needy individuals stacked on a few shelves, to distributing approximately 160,000 pounds of food stored in several large rooms, walk in refrigerators, and freezers within the CHURCH'S main building.

131.    Now, each month, the CHURCH'S Food Bank Ministry distributes approximately 160,000 pounds of food every month, serving over 6,400 needy individuals and families throughout their community.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**IV.    Defendants' Selective Enforcement and Intimidation Have Harmed the CHURCH'S Ability to Continue its Ministry.**

132.    Ultimately, the CHURCH'S only interest is its ability to exercise its religious beliefs.

133.    This includes (1) operating the Food Ministry on its property, as it has done for more than 30 years, use of trucks and volunteers to load and unload food at the front of the property, and a reasonable amount of time to conduct cleanup after loading and unloading operations.

134.    The CHURCH has always been open to working with the CITY on how to accomplish this and continue serving the needy in this heavily blighted area of Southwest Detroit.

135.    If Defendants prevent the CHURCH from operating its Food Ministry on its property, there is not an alternate location where it could functionally continue, as the CHURCH does not have the funding or resources to buy another building.

136.    As a direct result of Defendants' actions in selectively targeting the CHURCH and selectively enforcing their zoning regulations, the CHURCH and the Church leadership have been repeatedly subjected to quasi criminal code enforcement action, been subject to harassment impeding their operations, and had substantial amounts of property seized by the CITY.

137.    The CHURCH and its pastor cannot afford the mounting fines and possibility of criminal penalties that might incur if it continues its efforts to feed the hungry in the community.

138.    As a result, the CHURCH is being directly challenged and unreasonably hindered by the CITY based on their religious beliefs and goals to share the Gospel, tend to the poor and needy, and feed the hungry.

139.    Defendants' actions have caused food suppliers and donors to reject food donations to the CHURCH resulting in a loss of monetary and charitable donations.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

140.    The CHURCH has built these charitable relationships over the course of decades and the CITY'S selective and unlawful enforcement actions threaten those relationships and this will and has resulted in the permanent loss of donors.

141.    These harms not only prevent the CHURCH from feeding the hungry in the CITY but also interfere with the CHURCH'S ability to share the Gospel and follow Jesus' commands.

**COUNT I: VIOLATION OF RIGHTS UNDER THE RELIGIOUS LAND USE AND INSTITUTIONALIZD PERSONS ACT (42 USC 2000 CC): SUBSTANTIAL BURDEN**

142.    Under RULIPA, the government is prohibited from "impos[ing] or implement[ing] a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government can demonstrate that imposition of the burden on that person, assembly, or institution (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §2000cc(a)(1).

143.    To succeed on a RLUIPA claim, the plaintiff need only proffer a prima facie case that there was a violation in which government action has imposed a substantial burden on the plaintiff's religious exercise." Int'l Church of the Foursquare Gospel v. City of San Leandro, 673 F.3d 1059, 1066 (9th Cir. 2011); see 42 U.S.C. § 2000cc(a)(1).

144.    Once the plaintiff has shown "evidence at first sight" that a substantial burden on religion has been imposed by a government, the government must show that its action was "the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000cc(a)(1)(B) Harbor Missionary Church vs. City of San Buenaventura No. 14-56137, 9th Circ Crt of App  (Unpublished Opinion, 2016).

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

145. Defendants' zoning codes and ordinances constitute land use regulations under RLUIPA.

146. The burden placed on Plaintiffs' religious exercise, including their operation of a church and food pantry, substantially interferes with their ability to practice and advance their faith,

147. Defendants' actions are not in furtherance of a compelling governmental interest, nor are they the least restrictive means of achieving any such interest.

148. Courts have consistently and expressly recognized that food distribution to the poor and needy is religious exercise and an essential part of religious worship for almost all major religions.

149. In fact, providing food to the poor is an essential part of a religious exercise that is a central tenet of all major religions.

150. For a burden to be considered "substantial," it "must place more than an inconvenience on religious exercise."

151. Defendants' efforts to stop the CHURCH from conducting its Food Ministry at its current location, repeatedly ticketing the Pastor, threatening the church, hauling church officials into court repeatedly, and conspiring with activist groups to attack a church when the CITY would not have the right to do so themselves are more than a mere inconvenience on religious exercise.

152. When the CHURCH cannot afford to relocate, the actions of the city in fact substantially burdens the CHURCH'S religious exercise.

153. By the CITY'S use of biased enforcement of code regulations, the Plaintiff's CHURCH has been substantially hampered from operating its Food Ministry on its property, and by constructively barring the CHURCH from loading and unloading semi-trucks in its parking lot, Defendants are imposing a residential land use restriction against the CHURCH.

- 22 -
COMPLAINT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

154. The CHURCH'S Food Ministry is fundamental to the CHURCH'S free exercise and cannot be severed from its other religious practices.

155. Defendants have imposed a substantial burden on the CHURCH'S religious exercise by improperly targeting them for Code enforcement that is significantly harsher, different, and more targeted and comprehensive Code enforcement than adjoining, nearby, or similarly situated properties.

156. Similarly, Defendants have substantially burdened the Food Ministry's operation by ticketing the CHURCH for temporarily loading and unloading its semi-truck on its parking lot which was permitted for 34 years and is allowed under the City Code.

157. As demonstrated by previous support of the Food Ministry over the last 34 years, its treatment as a non-conforming use, and the CHURCH'S commitment to abide by all health and safety requirements, the city has no compelling interest in either prohibiting the ministry outright or substantially curtailing its operations.

158. Nor does the city have any interest in prohibiting the CHURCH from loading and unloading its semi-trucks in compliance with CITY Code.

159. And even if the CITY does have some interest in selectively enforcing its Zoning Code, its efforts are not narrowly tailored, as it has refused to allow the ministry to continue even though the CHURCH has taken great efforts to immediately clean up any debris left behind by the loading and unloading operations.

160. And even if the CITY has an interest in enforcement, it's efforts are targeted against a place of worship with no compelling justification in violation of RLUIPA.

161. This lack of tailoring is especially evident when pictures of adjoining, nearby, and similar properties in a far worse state than the CHURCH are not subjected to any code enforcement.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

162.    The harassment described above included confiscation of items, citations, targeted inspections, and other actions that fall under the category of the CITY interfering with CHURCH'S religious land use and operations, has substantially burdened CHURCH'S exercise of religious beliefs, and alters their mission to serve their community.

163.    The issuance of multiple citations to the CHURCH'S pastor, as mentioned above, highlights the aggressive nature of harassment, burdening the operation of the CHURCH, substantially burdens the exercise of religious beliefs in that they are being denied the access needed to continue to help their community.

164.    Furthermore, the mayor's involvement in sending out inspectors deliberately and substantially burdened the exercise of religion in numerous ways.

165.    As a direct and proximate result of Defendants' RLUIPA violation, the CHURCH has suffered and will continue to suffer irreparable harm, including the loss of its statutorily protected rights, entitling it to declaratory and injunctive relief, nominal damages, and attorneys' fees.

166.    Accordingly, Plaintiff seeks (1) a declaration that Defendants' restrictions on the CHURCH'S Food Ministry violate RLUIPA; (2) an order enjoining Defendants from taking any enforcement actions on this basis; (3)  actual damages; (4) nominal damages; and (5) appropriate equitable relief such as disgorgement of money obtained from auctioned property or replevin.

**COUNT II: VIOLATIONS OF RIGHTS UNDER THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT (42 USC 2000 CC): EQUAL TERMS**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

167.    Under RLUIPA, the government may not "impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(2).

168.    The CITY'S interest in enforcing its zoning ordinances does not grant it a license to treat the CHURCH worse than comparable institutions.

169.    Indeed, under RLUIPA's straightforward Equal Terms proscription, the city's motives for treating a religious institution unequally are irrelevant and this Court may not consider them.

170.    Regulations that treat religious assemblies or institutions differently and worse than nonreligious assemblies or institutions are inherently not neutral").

171.    Importantly, the "burden is not on the CHURCH to show a similarly situated secular assembly, but on the [Defendants] to show that the treatment received by the church should not be deemed unequal…It is sufficient that Defendants have treated religious institutions and nonreligious institutions on less than equal terms.

172.    Defendants have employed aggressive tactics, including cease-and-desist letters and even civil and criminal citations against the CHURCH'S pastor, to stop the use of semi-trucks at the CHURCH for its Food Ministry, and impose clean up burdens on the Plaintiffs that it does not impose on similarly situated commercial, Church, and noncommercial entities in the city.

173.    For example, areas of obvious and **permanent** rodent harborage (i.e. nonfood debris) are permitted at other nearby, similar and adjacent locations but at the Plaintiff's CHURCH, **temporary** nonfood debris that is immediately cleaned up after truck loading and unloading is selectively enforced by the Defendant against the CHURCH by Code enforcers from the CITY.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

174. Defendants' application of the city's ordinances violates RLUIPA because it treats the Church on less than equal terms compared to comparable nonreligious charitable programs and similarly situated for-profit commercial enterprises located just blocks away, across the street, or adjacent to the Plaintiff's Church.

175. As a direct and proximate result of Defendants' RLUIPA violation, the CHURCH has suffered and will continue to suffer irreparable harm, including the loss of its statutorily protected rights, entitling it to declaratory and injunctive relief, nominal damages, and attorneys' fees.

176. Accordingly, Plaintiff seeks (1) a declaration that Defendants' restrictions on the CHURCH'S Food Ministry violate RLUIPA; (2) an order enjoining Defendants from taking any enforcement actions on this basis; (3) actual damages; (4) nominal damages; (5) appropriate equitable relief such as disgorgement of money obtained from auctioned property or replevin.

**COUNT III: FREE EXERCISE OF RELIGION: UNITED STATES CONSTITUTION AMENDMENT I AND XIV PURSUANT TO 42 USC 1983**

177. Plaintiff incorporates the allegations set forth above as if fully set forth herein.

178. The Free Exercise Clause, which applies to the States under the Fourteenth Amendment, "withdraws from [governmental] power . . . (over) the exertion of any restraint on the free exercise of religion." *Sch. Dist. of Abington Twp. v. Schempp,* 374 U.S. 203, 222–23 (1963). The purpose of this clause "is to secure religious liberty in the individual by prohibiting any invasions thereof by civil authority." Id.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

179.    The Free Exercise Clause "forbids subtle departures from neutrality" and "covert suppression of religious beliefs." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993).

180.    "General applicability requires, among other things, that the laws be enforced evenhandedly."

181.    The "government may not 'treat any comparable secular activity more favorably than religious exercise" without violating these well-established principles. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. Educ*., 82 F.4th 664, 686 (9th Cir. 2023) (en banc) ("FCA") (quoting Tandon v. Newsom, 593 U.S. 61, 62 (2021)).

182.    The Free Exercise Clause also protects against government actions that are coupled with "official expressions of hostility to religion," whether subtle or overt. FCA, 82 F.4th at 690.

183.    This is especially the case where "government actions [are] coupled with 'official expressions of hostility to religion.'" Id. (quoting Masterpiece Cakeshop, Ltd. VS Colo. Civ. Rts. Comm'n, 584 U.S. 617, 639 (2018)).

184.    As such, any governmental practice "burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny" in which the government must advance "interests of the highest order" that are "narrowly tailored" to those interests. *Lukumi*, 508 U.S. at 546.

185.    Defendants, although acting under color of law, are abusing the City Code in an attempt to prohibit the CHURCH from exercising its sincerely held religious beliefs—To feed the hungry through its Food Ministry.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

186.    While Defendants suggest that they are merely attempting to enforce laws of general applicability, in fact the laws are being applied in a grossly and obviously biased way to the detriment of religious adherents like the Plaintiff.

187.    Defendants have clearly engaged in biased enforcement of the CHURCH property, in the use of its zoning laws, its municipal court, the mayor's office, and the zoning office demonstrate that their actions are anything but fair and unbiased.

188.    Unequal treatment of the CHURCH and other similarly situated, nearby, or adjacent properties is evident from the fact those properties have not been cited despite often being in worse condition at all times than the Plaintiffs property is just during loading and unloading operations from the truck to the food pantry.

189.    Defendants have exhibited unsolicited hostility against Pastor OSTOSH and the CHURCH.

190.    Rather than working cooperatively to find a solution to their alleged concerns, Defendants have resorted to targeted intimidation efforts in an effort to shut down the CHURCH'S religious practice.

191.    Defendant's actions include baselessly citing Pastor OSTOSH for zoning violations even though there was never proof he was the owner of the property.

192.    In fact, Pastor OSTOSH is not the owner of the property, but the CHURCH is the owner yet numerous citations have been issued in the name of Pastor OSTOSH, and he has been found "responsible" for numerous violations in his name, not the name of the CHURCH.

193.    As a direct and proximate result of Defendants' constitutional violation, the CHURCH has suffered and will continue to suffer irreparable harm, entitling it to declaratory and injunctive relief, nominal damages, and attorneys' fees.

- 28 -
COMPLAINT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

194.    Accordingly, Plaintiff seeks (1) a declaration that Defendants' restrictions on the CHURCH'S Food Ministry violate the CHURCH'S free exercise of religion under the First and Fourteenth Amendments; (2) an order enjoining Defendants from taking any enforcement actions on this basis; and (3) actual damages; (4) nominal damages; (5) appropriate equitable relief such as disgorgement of money obtained from auctioned property or replevin.

**COUNT IV: FIRST AMENDMENT VIOLATION-SPEECH AND RELIGION: 28 U.S.C. § 2201; 42 U.S.C. § 1983; Fed. R. Civ. P. 57 & 65, 18 USC 241 (Conspiracy Against the Rights of Plaintiff under 1983).**

195.    The preceding paragraphs are realleged and incorporated herein by reference.

196.    The First Amendment to the United States Constitution, as applied to the States via the Fourth Amendment, guarantees, inter alia, the right to free speech and prohibits unwarranted governmental interference with the free speech of citizens like the Plaintiff.

197.    At all times relevant to this case, Pastor OSTOSH and other members of the CHURCH engaged in conduct protected by the First Amendment.

198.    Such protected First Amendment conduct has included, but has not necessarily been limited to, posting his opinions about the actions of the CITY government on Facebook.

199.    Defendant Warren, coordinated with LGBT groups on information and belief in order to use them as a "cat's paw" of the civil rights conspiracy pleaded herein, and directly censored and otherwise punished Pastor OSTOSH'S speech, thus violating his federally protected rights under the U.S. and Michigan Constitutions, State law, and federal law.

200.    Defendant Warren, STONE, and others in the CITY willfully engaged in a criminal and civil conspiracy to violate Civil Rights in violation of 18 USCA 241 among other statutes.

– 29 –
COMPLAINT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

201.    Mayor LORI STONE, and other CITY officials knew or should have known, they were deliberately and maliciously violating well-established constitutional rights and would have no qualified immunity.

202.    Mayor LORI STONE and other CITY officials knew or should have known they were prohibited from entering a conspiracy with evil actors to violate the civil rights of the Plaintiff, including their statutory rights, their free speech rights, and their rights to practice their religion without interference from the state.

203.  As a direct and proximate result of Defendants' violations of Pastor OSTOSH'S rights, he and the CHURCH have sustained injuries.

204.  The loss of First Amendment rights, even momentarily, constitutes irreparable Harm and Pastor OSTOSH and the CHUCH will, and have been, irreparably harmed in the absence of injunctive relief to prevent future violations of their constitutional rights.

205.    Pastor OSTOSH is also entitled to prospective equitable relief in the form of a declaratory judgment because an actual controversy exists between the parties, and a declaratory judgment is necessary and appropriate as it would serve a useful purpose in clarifying and settling particular legal issues between the parties.

206.    Pastor OSTOSH is further entitled to compensatory damages, and punitive damages under 42 U.S.C. § 1983, given the Mayor and other CITY officials callous and reckless disregard of his rights and their participation in the conspiracy to violate those rights, as pleaded below, for the evil motive of retaliating against and discouraging her from speaking out again.

207.  Accordingly, Plaintiff seeks (1) a declaration that Defendants' restrictions on the CHURCH'S Food Ministry violate the CHURCH'S free speech under the First and Fourteenth

- 30 -
COMPLAINT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

Amendments; (2) an order enjoining Defendants from taking any enforcement actions on this basis; and (3) an award of damages.

**COUNT V: FIRST AMENDMENT VIOLATION-SPEECH AND RELIGION: 28 U.S.C. § 2201; 42 U.S.C. § 1983; Fed. R. Civ. P. 57 & 65, 18 USC 242 (Substantive Action Against the Rights of Plaintiff under 1983).**

208.    The preceding paragraphs are realleged and incorporated herein by reference.

209.    Plaintiff Curtis OSTOSH posted several items that were unflattering to the LGBTQ community and Mayor LORI STONE on Facebook under his own name.

210.    Immediately following one post, a group of LGBT female activists began gathering outside the CHURCH on weekdays in their vehicles parked in the street. The group began making fictitious complaints to the state of Michigan and CITY of Warren about the food quality being served by the CHURCH and food pantry.

211.    While complaints to the State were investigated and immediately dismissed with positive reports and recommendations **(EXHIBIT #3: REPORT FROM DEPARTMENT OF AGRICULTURE),** complaints to their new LGBT allies in the CITY of Warren government were treated very differently solely on account of the religious views of the Pastor and CHURCH and because the Pastor dared to publicly share those views.

212.    At every step, the CITY Defendants acted in concert with their activist allies in the LGBT community to censor Pastor OSTOSH'S protected speech with the CITY acting as the "cat's paw" for the hostile LGBT groups and using all powers of the city government to treat the Pastor and CHURCH differently, and worse, due to the latter's religious views and their status as a church.

213.    The City Defendants knew, or reasonably should have known, that they were violating well-established constitutional rights to which they would have no qualified immunity.

- 31 -
COMPLAINT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

214. The CITY Defendants are directly liable to Pastor OSTOSH and the CHURCH under the First Amendment for the deprivation of the First Amendment rights by means of biased censorship aimed at the Pastor and CHURCH because the Pastor dares to express religious views online.

215. Pastor OSTOSH is thus entitled to injunctive and declaratory relief against the CITY Defendants for the reasons stated above. In the absence of injunctive relief to prevent future violations of his rights by the CITY Defendants, Pastor OSTOSH and the CHURCH will be irreparably harmed.

216. Accordingly, Plaintiff seeks (1) a declaration that Defendants' restrictions on the CHURCH'S Food Ministry violate the CHURCH'S free speech under the First and Fourteenth Amendments; (2) an order enjoining Defendants from taking any enforcement actions on this basis; and (3) an award of damages.

**COUNT V: FIRST AMENDMENT VIOLATION – FREE EXERCISE: 28 U.S.C. § 2201; 42 U.S.C. § 1983 Fed. R. Civ. P. 57 & 65**

217. The preceding paragraphs are realleged and incorporated herein by reference.

218. At all times relevant to this case, Pastor OSTOSH has engaged in speech which, while argued publicly from a secular perspective, was nonetheless motivated by his sincere religious convictions concerning sexual morality, God's plan for marriage as solely between a man and a woman, and the need to protect the innocence of children.

219. Such protected First Amendment conduct has included, but has not necessarily been limited to, posting on Facebook his religiously motivated opinions about the actions of the government, which were opinions he felt obliged in conscience to express publicly.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

220. The CITY Defendants are liable to, acted to censor Pastor OSTOSH'S speech and take retaliatory actions against him under color of state law.

221. Defendant STONE knew, or reasonably should have known, that she was violating well-established constitutional rights as to which she would have no qualified immunity.

222. Defendant's actions did not constitute a law or regulation of general applicability but rather a specific targeting of Pastor OSTOSH'S speech because of its content, of which Mayor STONE and the other Defendants disapproved and aimed to suppress and punish.

223. Even if the CITY Defendants acted according to a law or regulation of general applicability, they failed to apply it to comparable secular activity—i.e., non-religiously-motivated but controversial speech—and indeed has not, on information and belief, applied censorship by using the City Code to persecute any other religious person for the use of his free speech online beyond the fact of the Pastor's religiously motivated speech.

224. Therefore, the CITY Defendants policy or practice in acting against Pastor OSTOSH cannot survive the required strict scrutiny, at least as applied, because it did not serve any compelling government interest and, even if it did, was not narrowly tailored to achieve any such hypothetical interest.

225. As a direct and proximate result of said Defendants' violations of Pastor OSTOSH'S free exercise rights, the Plaintiffs have sustained and will sustain injuries, and he is therefore entitled to (a) injunctive relief, without which will be irreparably harmed; (b) a declaratory judgment because an actual controversy exists between the parties, and a declaratory judgment is necessary and appropriate as it would serve a useful purpose in clarifying and settling particular legal issues between the parties; (c) compensatory damages; and (d) as

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

to Mayor STONE, individually, punitive damages under 42 U.S.C. § 1983, given her callous and reckless disregard of Pastor OSTOSH'S rights and her acting from evil motives as pleaded herein.

**COUNT VI:  FIRST AMENDMENT RETALIAION PURSUANT TO § 1983, RLUIPA, AND THE UNITED STATES AND MICHIGAN CONSTITUTIONS**

226. The preceding paragraphs are realleged and incorporated herein by reference.

227. The First Amendment includes not only the affirmative right to speak, but also the right to be free from retaliation by public officials for the exercise of free speech rights.

228. At all times relevant to this case, Pastor OSTOSH has engaged in conduct protected by the First Amendment.

229. Defendants engaged in acts of government retaliation for Plaintiff's protected speech.

230. These retaliatory acts specifically included, but are not limited to, the following by:

    a. Subjecting Pastor OSTOSH and the CHURCH to multiple CITY investigations which were contrary to State investigations.

    b. The mayor and her office urging City officials to "take care of the problem" of the CHURCH by using Code enforcement actions because the Pastor had dared speak publicly on issues over which the Defendants disagreed with the content and viewpoint

    c. Cooperating with LGBT groups to persecute a church and pastor because he posted information to which they disagreed with the content and viewpoint expressed by Pastor OSTOSH.

    d. Spreading disinformation to agencies of law enforcement, and ordering them, or misleading them into investigating Pastor OSTOSH and the CHURCH under false pretenses.

    e. Causing the public to believe Pastor OSTOSH was the subject of investigations, unlawfully prosecuting him with code violations that are selective, biased, and not enforced against nearby, or similar, commercial establishments which are not even religious institutions.

    f. Conspiring and otherwise working to silence, chill, and intimidate Pastor OSTOSH from the exercise of his legally and constitutionally protected rights going forward.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

g.  Directly inciting public scorn, ridicule, insults, and threats to Pastor OSTOSH and his safety;

h.  Injuring Pastor OSTOSH'S standing in the community;

i.  Causing Pastor OSTOSH to feel unsafe and unwelcome in his community;

j.  Causing Pastor OSTOSH to have well-founded fears of liability without legal cause;

k.  Directly and indirectly causing Pastor OSTOSH anxiety, fear, concern, and worry for the health, safety, and welfare of himself and his family.

l.  Other means to be demonstrated in discovery or by the proof at trial.

231.  The retaliatory acts complained of would deter a person of ordinary firmness from continuing to engage in the protected conduct engaged in by Pastor OSTOSH who would reasonably fear in that regard.

232.  Defendants have thus chilled Pastor OSTOSH'S exercise of the First Amendment right to free speech going forward.

233.  There was a causal connection between Pastor OSTOSH protected conduct and said Defendants' adverse actions; that is, the adverse action by said Defendants was motivated by Pastor OSTOSH'S protected conduct.

234.  Said Defendants knew, or reasonably should have known, they were violating well-established constitutional rights as to which they would have no qualified immunity.

235.  As a direct and proximate result of said Defendants' retaliation against Pastor OSTOSH'S exercise of his right to Free Speech under the First Amendment, he has sustained injuries for which he is entitled to compensatory and punitive damages.

236.  Pastor OSTOSH will be irreparably harmed in the absence of injunctive relief to prevent future retaliation against the exercise of her constitutional right to free speech.

237.  Plaintiffs are thus entitled to (a) preliminary and permanent injunctive relief;  (b) a declaratory judgment because an actual controversy exists between the parties, and a declaratory judgment is necessary and appropriate as it would serve a useful purpose in settling particular

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

legal issues between the parties; (c) compensatory damages and, punitive damages under 42 U.S.C. § 1983, given their callous and reckless disregard of Plaintiff's rights and their acting from evil motives as pleaded above.

**COUNT VII: SUPPLEMENTAL JURISDICTION: MICHIGAN CONSTITUTION ARTICLE I, §4 PROTECTS RELIGIOUS FREEDOM THROUGH OPERATION OF THE ELLIOT LARSEN CIVIL RIGHTS ACT**

238.    The Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs above.

239.    This court may exercise Pendant Jurisdiction over the State claims pursuant to 28 USC 1367.

240.    The Constitution of the State of Michigan is like the Federal Constitution, and our courts have long recognized that it provides at least as much protection.

241.    The Michigan Constitution states Article I § 4:

> Freedom of worship and religious belief; appropriations. Sec. 4.
> Every person shall be at liberty to worship God according to the dictates of his own conscience….The civil and political rights, privileges and capacities of no person shall be diminished or enlarged on account of his religious belief.

242.    In this context, the Michigan Constitution provides MORE protection than the Federal Constitution in that it prohibits the diminishment of civil and political rights and privileges "on account of his religious belief."

243.    The Federal Constitution merely protects against infringements on the practice of religion while the Michigan Constitution prohibits the diminishment of civil and political rights on account of religion and this would include the fundamental rights to free speech, and to practice your religion, among others.

244.    Defendants diminished the civil and political, rights, and licenses of the Plaintiffs on account of their religious beliefs in violation of the Michigan Constitution when they imposed disparate,

- 36 -
COMPLAINT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

different, and more exacting City code standards on the Plaintiff on account of the Plaintiff's religious beliefs.

245. Defendants did not treat similarly situated properties that were not religious based in a similar way but treated Plaintiff CHURCH and Pastor OSTOSH with far more exacting standards than imposed an adjacent, nearby, and similar properties on account of their religious beliefs and exercise of their free speech rights.

246. As a direct and proximate result of the Defendant's unlawful conduct described above and the violation of Plaintiff's constitutional rights, Plaintiffs have suffered severe mental anguish and emotional distress, including but not limited to, stress and anxiety, and emotional pain and suffering.

247. Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of Plaintiff's constitutional right to religious freedom and as such, their actions are outrageous and malicious, were intended to injure Plaintiff, and were done with reckless indifference to Plaintiff's constitutional rights.

Plaintiffs are thus entitled to (a) preliminary and permanent injunctive relief; (b) a declaratory judgment because an actual controversy exists between the parties, and a declaratory judgment is necessary and appropriate as it would serve a useful purpose in settling particular legal issues between the parties; (c) compensatory damages and, punitive damages under 42 U.S.C. § 1983, given their callous and reckless disregard of Plaintiff's rights and their acting from evil motives as pleaded above.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**COUNT VIII: SUPPLEMENTAL JURISDICTION: MICHIGAN CONSTITUTION ARTICLE I, §2 PROTECTS RELIGIOUS FREEDOM BY PROHIBITING THE DENIAL OF EQUAL PROTECTION OF LAWS IN THE EXERCISE OF CIVIL OR POLITICAL RIGHTS ON ACCOUNT OF RELIGION**

248.    The Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs above.

249.    This court may exercise Pendant Jurisdiction over the State claims pursuant to 28 USC 1367.

250.    The Constitution of the State of Michigan is similar to the federal Constitution, and our courts have long recognized that it provides at least as much protection.

251.    The Michigan Constitution states at Article 2 §2 states:

> **Equal Protection Clause**: Article I, Section 2 of the Michigan Constitution states that no person shall be denied the equal protection of the laws or be discriminated against in the exercise of their civil or political rights **because of religion…**

252.    The Federal Constitution merely protects against infringements on the practice of religion while the Michigan Constitution prohibits the diminishment of civil and political rights on account of religious beliefs and this would include the fundamental rights to express your opinion in public without being subjected to unwanted enforcement that is biased against the religious beliefs expressed.

253.    Defendants diminished civil and political privileges, rights, and licenses of the Plaintiffs on account of their religious beliefs in violation of the Michigan Constitution when they imposed disparate, different, and more exacting City code standards on the Plaintiff on account of the Plaintiff's religious beliefs.

254.    Defendants did not treat similarly situated properties that were not religious based in a similar way but treated Plaintiff CHURCH and Pastor OSTOSH with far more exacting

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

standards than imposed on adjacent, nearby, and similar properties on account of their religious beliefs.

255. As a direct and proximate result of the Defendant's unlawful conduct described above the violation of Plaintiff's constitutional rights, Plaintiffs have suffered severe mental anguish and emotional distress, including but not limited to, stress and anxiety, and emotional pain and suffering.

256. Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of Plaintiff's constitutional right to religious freedom and as such, their actions are outrageous and malicious, were intended to injure Plaintiff, and were done with reckless indifference to Plaintiff's constitutional rights.

**COUNT IV: SUPPLEMENTAL JURISDICTION: THE MICHIGAN ELLIOT LARSEN CIVIL RIGHTS ACT PROHIBITS DENIAL OF PUBLIC ACCOMMODATIONS BECAUSE OF RELIGIOUS IDENTITY, WHICH WAS VIOLATED BY THE DEFENDANT'S INEQUITABLE AND BIASED CODE ENFORCEMENT THAT WAS DIFFERENT AND MORE SEVERE DUE TO THE PLAINTIFF'S RELIGIOUS AND POLITICAL EXPRESSION**

257. The Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs above.

258. This court may exercise Pendant Jurisdiction over the State claims pursuant to 28 USC 1367.

259. Elliot Larsen is the Michigan Civil Rights Act provides at section 37.2302:

> A person shall not: (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion….

260. Elliot Larsen defines "Place of public accommodation" as "a business, or educational…health… facility, or institution of any kind…whose…services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public."

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

261.   The CITY of Warren, State of Michigan is a Municipal Corporation in Michigan subject to the public accommodation provisions of the Elliot Larsen Civil Rights Act.

262.   The CITY of Warren is prohibited by the Elliot Larsen Civil Rights act from violating the Michigan Constitution by treating a religious institution, differently than other similarly situated non-religious institutions and by violating the free speech and religious rights of the Plaintiffs.

263.   The CITY Defendants did in fact engage in conduct constituting biased enforcement on account of (a) the Plaintiff's exercise of their Free Speech rights, (b) their sincerely held religious beliefs, (c) in retaliation for exercising such rights and (d) due to the Plaintiff's status as a church and religious institution.

**COUNT X:  SUPPLEMENTAL JURISDICTION:  THE MICHIGAN ELLIOT LARSEN CIVIL RIGHTS ACT PROHIBITS DENIAL OF PUBLIC ACCOMADATIONS BECAUSE OF THE PRACTICE OF RELIGION, WHICH WAS VIOLATED BY THE DEFENDANT'S INEQUITABLE AND BIASED CODE ENFORCEMENT THAT WAS DIFFERENT AND MORE SEVERE DUE TO THE PLAINTIFF'S RELIGIOUS AND POLITICAL EXPRESSION**

264.   The Plaintiff re-alleges and incorporates by reference herein all the allegations contained in paragraphs above.

265.   This court may exercise Pendant Jurisdiction over the State claims pursuant to 28 USC 1367.

266.   Elliot Larsen is the Michigan Civil Rights Act provides at section 37.2302:

> A person shall not: (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion….

267.   Elliot Larsen defines "Place of public accommodation" as "a business, or educational…health… facility, or institution of any kind…whose…services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

268. The CITY of Warren, State of Michigan is a Municipal Corporation in Michigan subject to the public accommodation provisions of the Elliot Larsen Civil Rights Act and is required to "reasonably accommodate" a person's religious views and practice.

269. The CITY of Warren is prohibited by the Elliot Larsen Civil Rights act from violating the Michigan Constitution by treating religious practices differently than other similarly situated nonreligious practices or by failing to accommodate such religious practices and views.

270. The CITY of Warren is prohibited by the Elliot Larsen Civil Rights act from violating the Michigan Constitution by treating religious practices differently or worse than other similar non-religious practices.

271. The CITY of Warren did in fact engage in conduct that treated Plaintiff, a religious institution that publicly expressed their religious views, worse and differently than it treated other similarly situated, nearby, or adjacent properties.

## COUNT XI: MICHIGAN FREEDOM OF INFORMATION ACT

272. The Plaintiff re-alleges and incorporates by reference herein all the allegations contained in paragraphs above.

273. Pursuant to the Michigan Freedom of Information Act, Plaintiff sent three (3) records requests to the CITY of Warren (**EXHIBIT 5: RECORDS REQUEST TO WARREN**). City records indicate the request was "GRANTED" and then "CLOSED" due to Plaintiff not paying the requested fee.

274. The plaintiff remembers getting the records returned to him, but notes that they were completely redacted and blacked out. He also points out that there was never any mention of a fee for copying or compiling the documents.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

275.     Under the Michigan Freedom of Information Act, a Plaintiff may sue for injunctive and other appropriate relief, attorney fees, and the disclosure and release of agency records improperly withheld by a government body such as Defendant city.

276.     The denial of the records request and the decision to deny, and the domicile of the deciders are all located within the jurisdiction of this court in the CITY of Warren, State of Michigan.

277.     Michigan provides several methods for obtaining information about public records including the FOIA statute; citizens making a FOIA request have the right to inspect the public record of a public body upon written request unless the record is exempt from disclosure. MCL 15.233(1).

278.     Plaintiff was denied access to all records by the fact the city chose to redact all portions of the records sent for the 2025 request and by formal DENIAL from the City regarding the 2026 request claiming the previously granted request was "Unduly Burdensome."

279.     Defendants are in substantial violation of the Michigan Freedom of Information Act making them responsible for the fees of Plaintiff, attorney fees, damages, and liable for an order of enforcement from this court.

**COUNT XII:  RETALIATION UNDER RLUIPA (1983) AND ELCRA AGAINST THE CHURCH REGARDING THE GRANT OF A CHARITABLE GAMING LICENSE**

280.     The Plaintiff re-alleges and incorporates by reference herein all the allegations contained in paragraphs above.

281.     Retaliation for the exercise of a constitutional right under RLUIPA is a separate claim from the plaintiff's substantive First Amendment or statutory RLUIPA claim and is defined as "Any action taken by defendants in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself."

282.     A prima facie case of Retaliation for the exercise of a constitutional right under the Elliot Larsen Civil Rights Act is established when a Plaintiff shows:  "(1) that he engaged in a protected

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

activity; (2) that this was known by the defendant; (3) that the defendant took an employment (government) action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action."

283.    In April and May of 2024, Harvest Time attempted to obtain a Charitable Gaming License from the State of Michigan and the City of Warren to hold raffles and other fundraising activities in support of their charitable work.

284.    Again, the State of Michigan investigated the request and granted conditional approval to the gaming license pending a resolution from the City of Warren.

285.    Such licenses are commonly granted by local and State authorities to religious institutions in the State of Michigan and are held by many churches and nonprofit organizations.

286.    The resolution only needed to be approved by the Warren City Council in order for the State to grant the license after the Council, or local unit of government, confirmed that the requesting entity (The "CHURCH") is located within that local unit of government and does nonprofit work in that local unit of government.

287.    Normally this is a routine request and even pro forma since the City only needs to confirm the existence of the requesting entity while the State has the duty to investigate the request and the ability to grant or deny the gaming license.

288.    The Acting City Attorney Mary Michaels approved of the gaming license request and put this matter on the City Council agenda.

289.    Mayor Lori Stone initially signed off and approved the gaming license request on this but then began a campaign with the City Council to deny the request.

290.    The Warren City Council stonewalled the request due to pressure from Mayor Stone's office in retaliation for Plaintiff engaging in protected activities.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

291.    The Elliot Larsen Civil Rights Act, MCL 37.2102(1) provides that:

> *The opportunity to obtain…the full and equal utilization of **public** accommodations…[and]…public service… without discrimination because of religion, as prohibited by this act…is recognized and declared to be a civil right.*

292.    Plaintiff was DENIED the full and equal utilization of public accommodations and public service by the City of Warren when they willfully and spitefully denied the gaming license request.

293.    The basic request for a gaming license was DENIED despite the City only needing to confirm that Harvest Time operated within the jurisdiction of Warren as a nonprofit entity, an undeniable fact for the last 34 years.

294.    The City of Warren retaliated against Pastor CURTISS and HARVEST TIME CHRISTAIN FELLOWSHIP by spitefully denying a gaming license when all they had to do was confirm the existence of HARVEST TIME and the charitable activities of the church.

295.    The CHURCH has suffered reputational and significant monetary loss because of this denial.

**COUNT XIII:  RETALIATION UNDER RLUIPA (1983) AND ELCRA AGAINST THE CHURCH REGARDING PLAINTIFF's REMOVAL AS A WARREN HOUSING COMMISSIONER**

296.    The Plaintiffs re-alleges and incorporates by reference herein all the allegations contained in paragraphs above.

297.    Plaintiff CURTISS OSTOSH was a member of the Warren Housing City Commission for many years preceding the installation of Mayor Stone.

298.    As previously alleged, Defendant, CITY OF WARREN began a malicious campaign against The CHURCH and Pastor OSTOSH following the election of Mayor Stone.

- 44 -
COMPLAINT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

299. As part of the campaign, the CITY improperly wrote tickets for HARVEST TIME CHRISTIAN FELLOWSHIP properties owned by the church for blight and other violations in the name of CURTISS OSTOSH personally.

300. CURTISS OSTOSH is not the owner of any of the properties cited by the CITY OF WARREN and this was repeatedly brought up in the Code Enforcement Court and completely ignored by the judge (C.F. **EXHIBIT 6:  PLAINTIFF'S MOTION FOR RECONSIDERATION IN CODE ENFORCEMENT COURT**); **EXHIBIT 7:  PLAINTIFFS MOTION FOR STAY OF PROCEEDINGS  IN CODE ENFORCEMENT COURT)**.

301. The reason for the City's insistence on citing CURTISS OSTOSH personally became known later when the City Council brought this issue up publicly, claiming that CURTISS OSTOSH personally owed money to the city and accordingly, should be removed as a Warren Housing Commissioner because of this unpaid debt to the city.

302. The city council issued a formal resolution on August 26, 2025 giving PASTOR OSTOSH 30 days to pay these tickets or face automatic removal from the Housing Commission.

303. This ruling was in gross error because Plaintiff had an appeal pending on the tickets that he owed on August 26, 2025 and had filed multiple motions for a Stay of enforcement and retaliatory actions taken against him.

304. Plaintiff's appeal was DISMISSED over an appeal bond issue but at the time the City Council ordered him to pay outstanding debt to the city, the Plaintiff's appeal of that outstanding debt remained pending before the appropriate appellate court (**Case Number and timeline of Macomb Circuit Court Case**).

- 45 -
COMPLAINT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

305.   Plaintiff ended up paying the appeal bond on or about October 3, 2025 **(EXHIBIT #10: PAYMENT RECEIPTS AND COURT DOCKET/DISMISSALS)** but despite paying the bond and all outstanding tickets in full, the Circuit Court Judge DISMISSED his APPEAL on October 17, 2025 (**EXHIBIT #11:  DISMISSAL OF APPEAL**)for failure to pay the bond which was almost a full TWO MONTHS before the actions of the City Council and TWO FULL WEEKS after he had paid the Bond and tickets.

306.   The actions of the Warren Housing City Commission were thus unlawful and void nunc pro tunc.

307.   The actions of the City Council in ordering PLAINTIFF OSTOSH to pay sums that were under appeal to the appropriate appellate court, and then threatening to remove him as a housing commissioner member when he did not pay such sums even though an appeal was pending at the time were taken in retaliation for his social media posts and in violation of his Free Speech rights, and the practice of his religion.

**COUNT XIV:  RETALIATION UNDER RLUIPA (1983) AND ELCRA AGAINST THE CHURCH REGARDING CITY LAWSUIT AGAINST PLAINTIFF OSTOSH OVER THE PROPERTY LOCATED AT  11055 JEWETT WARREN, MI 48089**

308.   On or about August 2019, **HARVEST TIME CHRISTIAN FELLOWSHIP** purchased a dilapidated tax reverted house from the City of Warren for $1.00.

309.   The City of Warren had a program at the time to sell blighted and dilapidated properties to veteran groups, nonprofit groups and churches in order to get these properties back on the tax rolls and lift the burden of holding costs and liabilities for these properties from the city.

310.   Unfortunately, some of these properties, including PLAINTIFF's property, came already inhabited by squatters, drug dealers and others.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

311.    HARVEST TIME spent many thousands of dollars rehabbing this house, and clearing out the squatters, and countless hours of labor as it had no working plumbing or electrical, and no furnace or hot water tank, having been stripped by scrappers of anything of value.

312.    HARVEST TIME also paid thousands of dollars in real estate taxes since the purchase in 2019.

313.    On March 4, 2025, the City of Warren sued HARVEST TIME in the Macomb County Circuit Court (being Case #2025-000918-CH) alleging fraud in the acquisition of this house and demanding the house be returned to the city.

314.    As of the time the COMPLAINT at Bar was filed, this case in the Macomb County Circuit Court remains ongoing.

315.    The case was filed by Attorney Jeffrey Schroder from Plunkett Cooney even though the current Mayor was supposed to appoint a city attorney with approval from the Warren City Council.

316.    For the past 2 1/2 years Mayor Stone has refused to appoint a City Attorney and has been using Mr. Schroder as the de factor Attorney for the Warren City Council.

317.    Unfortunately, Mr. Schoder has demonstrated great animus against HARVEST TIME CHRISTIAN FELLOWHIP and in particular against PASTOR OSTOSH.

318.    For example, a council member publicly stated at Council meetings that the PLAINTIFF is a "Christian nationalist" and he "is a disgrace and all his votes on the council should be cancelled."  He has publicly called for the Mayor to "call out the army to round up people like him."

319.    A council member has stated at Council meetings that Plaintiff and people like his should be "rounded up and executed."

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

320.    Many other similarly situated religious and secular institutions who had purchased houses through the WARREN City program were not sued for failing to make sufficient improvements or for making far fewer improvements than the PLAINTIFF.

321.    To PLAINTIFF's knowledge, he is the only person to be sued under this City buyback program.

322.    The filing of this case and its prosecution represents gross retaliation for the PLAINTIFF exercising their constitutional rights to free speech and the practice of religion pursuant to RLUIPA and ELCRA.

WHEREFORE, Plaintiff, CURTISS OSTOSH and HARVEST CHRISTIAN FELLOWSHIP respectfully pray this court to:

1.    Enter an immediate Injunction and Temporary Restraining Order to stop the unlawful enforcement and harassment of Plaintiff by Defendant CITY OF WARREN
2.    After trial, award the Plaintiffs costs, damages, attorney fees, and such other relief as the court permits or the law requires.

Dates this 15th day of May, 2026

Respectfully Submitted,
PACIFIC JUSTICE INSTITUTE

*David C. Peters II*

David C. Peters II, JD, MS, PhD, Esq.
Licensed in Michigan (P48648)
Pacific Justice Institute Metro Detroit Office
Attorneys for Plaintiffs
PO Box 51787
Livonia, Michigan 48151-1787
Email: dpeters@pji,org
Phone:  (734) 732 – 5352
Main Number: (916) 587 – 6900

# EXHIBIT 1: Letter From the City



**MACOMB COMMUNITY ACTION**

Edward N. Scott III, M.A.E.
**Executive Director**

August 4, 2025

Harvest Time Hope
P. O. Box 70
Warren, MI 48090

Attn: Suzanne Ostosh

**Subject:  Notice of Termination of Partnership**

As a food resource to the hungry in Macomb County we must ensure that all food safety and distribution guidelines are followed. Following a recent review, we regret to inform you that we will be discontinuing our partnership with your organization. This letter serves as formal notice that our partnership will end effective today 8/4/2025.

The following were repeated concerns:

- Boxes of food and canned goods sitting directly on the floor
- Repackaged frozen meat without labels, sitting unrefrigerated
- Molded produce sitting in the elements
- Refrigeration logs not kept up to date

We ask for your cooperation during this transition to ensure a smooth and orderly conclusion of our partnership.

We are committed to working with you to ensure compliance with any remaining reporting or inventory requirements. We ask that you cease all food distribution under our partnership by the effective termination date and return any outstanding assets, documents, or materials that belong to our organization, per our agreement.

As always, our commitment to serving our community is a top priority.  To assist in locating additional resources for food, we have attached a list of local pantries and resources.

Should you have questions or wish to discuss this further, please don't hesitate to reach out directly to Merissa Pacholek (586)469-6005.

Thank you again for your service and partnership.


Sincerely,

Andrew Cox, MPH, REHS
Director/Health Officer,
Macomb County Health and Community Services

**Robert A. VerKuilen Building**

**21885 Dunham Road, Suite 10 | Phone 586-469-7769 | Fax 586-469-5530**

**macombgov.org/macomb-community-action**

# Exhibit 2: Facebook Post by Pastor Ostosh



26   26 comments   2 shares

# Exhibit 3:
# Letter from Department of Agriculture



Michigan
Department of
**AGRICULTURE**
& Rural Development

# FOOD ESTABLISHMENT EVALUATION REPORT

FOOD & DAIRY DIVISION
P.O. Box 30017, Lansing, MI 48909
Toll-free Phone: 800-292-3939

In accordance with Act 92 of 2000 as amended

Inspection Number
**262721**
Inspection Date
**08/05/2025**

---

**HARVEST TIME CHRISTIAN FELLOWSHIP**
8204 E 9 MILE RD
WARREN, MI 48089-2326

## ESTABLISHMENT INFORMATION

| | | | |
|---|---|---|---|
| Entity ID: | UFE-305397 | Phone Number: | 586-758-3295 |
| Unlicensed Category: | License exempt | | |
| Variance In Place: | | Risk Prioritization: | No operation codes found |
| Establishment Description: | Harvest Time Food Distribution Center/food pantry occurring on Tuesday's and Friday's. | | |

## EVALUATION INFORMATION

| | | | |
|---|---|---|---|
| Evaluation Type: | Investigation | Evaluation Date/Time In: | 08/05/2025 02:45 PM |
| Evaluation Method: | In person | Evaluation Date/Time Out: | 08/05/2025 03:15 PM |
| FDA Inspection: | No | | |
| Person In Charge: | Sue Ostosh | | |

## COMPLAINTS

| | | | |
|---|---|---|---|
| Complaint: | 5219 | Non-Foodborne Illness | Complaint Received Date: | 07/30/2025 |
| Implicated Product: | Moldy, expired food. Bugs in store | | |
| Lot Codes: | Unknown | Product Date of Purchase: | Unknown |
| UPC / SKU Number: | Unknown | Product Size / Container Type: | Unknown |
| USDA Plant Number: | Unknown | Expiration / Use By / Best By Date: | Unknown |

Details of Complaint:

Serving molded produce/bread, expired meat passed 6months,fly infestation, smashed flies in windows visible from the outside of the building, cockroaches in clusters crawling on canned good and other foods that are being served to clients in need

---

## VIOLATIONS

No Violations Cited.

## EVALUATION COMMENT

An in-person investigation was conducted by Inspector Heather Shupe. At the time of the complaint investigation Inspector Shupe spoke with Sue Ostosh, person in charge (PIC), who was not aware that this specific complaint had been made. The PIC did state that they believe this to be a retaliatory act against the establishment. MDARD has conducted similar complaint investigations for this establishment on 7/14/2023, 10/22/2024, and 5/29/2025.



# FOOD ESTABLISHMENT EVALUATION REPORT

FOOD & DAIRY DIVISION
P.O. Box 30017, Lansing, MI 48909
Toll-free Phone: 800-292-3939

In accordance with Act 92 of 2000 as amended

Inspection Number
**223145**
Inspection Date
**07/14/2023**

**HARVEST TIME CHRISTIAN FELLOWSHIP**
8204 E 9 MILE RD
WARREN, MI 48089-2326

## ESTABLISHMENT INFORMATION

| | | | |
|---|---|---|---|
| Entity ID: | UFE-305397 | Phone Number: | 586-758-3295 |
| Unlicensed Category: | License exempt | | |
| Variance In Place: | | Risk Prioritization: | No operation codes found |
| Establishment Description: | Harvest Time Food Distribution Center/food pantry occurring on Tuesday's and Friday's. | | |

## EVALUATION INFORMATION

| | | | |
|---|---|---|---|
| Evaluation Type: | Investigation | Evaluation Date/Time In: | 07/14/2023 02:30 PM |
| Evaluation Method: | In person | Evaluation Date/Time Out: | 07/14/2023 03:15 PM |
| FDA Inspection: | No | | |
| Person In Charge: | Sue Ostosh | | |

## COMPLAINTS

| | | | |
|---|---|---|---|
| Complaint: | 1619 \| Non-Foodborne Illness | Complaint Received Date: | 07/11/2023 |

Details of Complaint:

Food is being delivered to this address for a food bank. The truck that holds the food is not refrigerated. This food, including meats and other perishable goods has been temperature compromised, the people handing out the food say it is good for 4 hours. Several of the canned goods are expired, some are even bloated with botulism, they discard those but still distribute the expired ones.  If people are donating money to help purchase these goods, they need to see what their money is buying. I think most of the money goes in their pocket.

## VIOLATIONS

No Violations Cited.

## EVALUATION COMMENT

A complaint was received by the department regarding this establishment on 7/11/2023 that alleges the following:

"Food is being delivered to this address for a food bank. The truck that holds the food is not refrigerated. This food, including meats and other perishable goods has been temperature compromised, the people handing out the food say it is good for 4 hours. Several of the canned goods are expired, some are even bloated with botulism, they discard those

| Inspection Number | Inspection Date |
|---|---|
| **223145** | **07/14/2023** |

but still distribute the expired ones.  If people are donating money to help purchase these goods, they need to see what their money is buying. I think most of the money goes in their pocket."

Investigation:

At the time of the complaint investigation on 7/14/2023, Inspectors Taylor Richards and Tianna Spencer spoke with the person in charge, Sue Ostosh. Mrs. Ostosh was aware that a complaint had been made and provided the Inspectors with the following information regarding the complainant:

- Mrs. Ostosh stated she believes the complainant is her ex-husband and stated that due to personal circumstances unrelated to food safety, the ex-husband has been in retaliation against the Harvest Time organization and has filed multiple complaints against Harvest Time throughout the years.
- Mrs. Ostosh stated the foods are received by Gleaners Community Food Bank and are delivered to Harvest Time on Tuesdays and Fridays around 2:30pm, with distribution occurring from 3pm-6pm. Additionally, Mrs. Ostosh stated the foods are delivered in an unrefrigerated truck, however, the foods are in transit for approximately 25 minutes and are then unloaded and immediately stocked inside the coolers and freezers located inside the Harvest Time building to then be distributed to the guests who receive the foods. Mrs. Ostosh added that if any frozen foods are received thawed and if any refrigerated foods are received out of temperature, that the foods are not distributed and are immediately disposed.

During the investigation, the Inspectors observed the firm's coolers and freezers located inside the building and the coolers and freezers were observed maintaining foods at the required temperatures. The Inspectors observed frozen food items such as whole chicken, hot franks, and breakfast sandwiches in the reach-in freezer and all were observed frozen solid with no evidence of thawing or temperature abuse. The Inspectors additionally observed refrigerated food items such as eggs and milk, and the items were observed held in refrigeration in retail display coolers which were observed maintaining temperatures of 41 degrees F or less. The firm additionally offers boxed and canned food items for distribution and all of the boxed and canned food items were observed intact and within their last recommended date of sale. No bloated or damaged canned food items were observed and Mrs. Ostosh stated that if any bloated or damaged canned food items are received that they are disposed and not distributed.

During the investigation, no foods were observed past their recommended last date of sale or with any evidence of adulteration. The Inspectors additionally observed the volunteers handling the food items and the food items were observed being handled carefully and were held in a clean, dry location.

Sanitation does not appear to be an issue at this facility.

Violations were not observed during the investigation.

Complainant was not notified of the outcome of this investigation as the complainant was anonymous.

| Report Provided To | Delivery Method | Signature |
|---|---|---|
| Sue Ostosh | Emailed<br>sue.harvesttime@gmail.com | |

| Inspector / Inspector ID | Contact Information | Signature |
|---|---|---|
| **Taylor Richards / 220** | **RichardsT9@michigan.gov<br>248-408-1874** | |
| **Tianna Spencer / 159** | **SpencerT1@michigan.gov<br>248-388-3837** | |

HARVEST TIME CHRISTIAN
FELLOWSHIP

Page 2 of 2



**Michigan**
Department of
**AGRICULTURE**
& Rural Development

# FOOD ESTABLISHMENT EVALUATION REPORT

FOOD & DAIRY DIVISION
P.O. Box 30017, Lansing, MI 48909
Toll-free Phone: 800-292-3939

In accordance with Act 92 of 2000 as amended

Inspection Number
**258703**
Inspection Date
**05/29/2025**

---

**HARVEST TIME CHRISTIAN FELLOWSHIP**
8204 E 9 MILE RD
WARREN, MI 48089-2326

## ESTABLISHMENT INFORMATION

| | | | |
|---|---|---|---|
| Entity ID: | UFE-305397 | Phone Number: | 586-758-3295 |
| Unlicensed Category: | License exempt | | |
| Variance In Place: | | Risk Prioritization: | No operation codes found |
| Establishment Description: | Harvest Time Food Distribution Center/food pantry occurring on Tuesday's and Friday's. | | |

## EVALUATION INFORMATION

| | | | |
|---|---|---|---|
| Evaluation Type: | Investigation | Evaluation Date/Time In: | 05/29/2025 03:00 PM |
| Evaluation Method: | Phone | Evaluation Date/Time Out: | 05/29/2025 03:30 PM |
| FDA Inspection: | No | | |
| Person In Charge: | Sue Ostosh | | |

## COMPLAINTS

| | | | |
|---|---|---|---|
| Complaint: | 4875 | Non-Foodborne Illness | Complaint Received Date: | 05/28/2025 |

Details of Complaint:

They are giving away expired food. The location is filthy and smells like something is dead inside the building.

---

## VIOLATIONS

No Violations Cited.

## EVALUATION COMMENT

A complaint was received by the department regarding this establishment on 5/28/2025 that alleges the following:

"They are giving away expired food. The location is filthy and smells like something is dead inside the building."

Investigation:

At the time of the complaint investigation Inspector Taylor Richards spoke with the person in charge, Sue Ostosh. Mrs. Ostosh was not aware that a complaint had been made, however, stated she may know who filed the complaint as another retaliatory act against the firm. The following items were discussed during the phone call:

- Mrs. Ostosh stated the foods are received by Gleaners Community Food Bank located in Detroit, MI and are

| Inspection Number | Inspection Date |
|---|---|
| **258703** | **05/29/2025** |

delivered to Harvest Time on Tuesdays and Fridays around 2:30pm, with distribution occurring from 3pm-6pm. Regarding storage of time/temperature control for safety foods, the firm has three two door coolers, a two door freezer, three one door freezers, and two units that are able to function as a dual cooler/freezer.

- Regarding the section of the complaint describing expired foods being given away, Mrs. Ostosh stated the establishment does not offer any past-date foods to people at any time. Mrs. Ostosh stated that when the establishment receives donated foods, that the foods are sorted by volunteers and stated that any past-dated foods or foods appearing to be damaged are removed and discarded.
- Regarding sanitation, Mrs. Ostosh stated the firm cleans the physical facility regularly and stated the firm does not have any past or present pest issues.
- Lastly, Mrs. Ostosh stated the firm does not receive any foods from salvage companies.

Complainant was not notified of the outcome of this investigation as the complainant was anonymous.

| Report Provided To | Delivery Method | Signature |
|---|---|---|
| Sue Ostosh | Emailed<br>sue.harvesttime@gmail.com | |

| Inspector / Inspector ID | Contact Information | Signature |
|---|---|---|
| **Taylor Richards / 220** | **RichardsT9@michigan.gov**<br>**248-408-1874** | |

Inspection Number
**262721**

Inspection Date
**08/05/2025**

The following topics were observed and discussed at the time of the investigation:

- The firm receives donations from Macomb County and Gleaners Community Food Bank located in Detroit, MI and are delivered to Harvest Time on Tuesdays and Fridays around 2:30pm, with distribution occurring from 3pm-6pm. A distribution event was occurring at the time of the investigation.
- Food donations are inspected by volunteers and staff before and during the distribution events. Expired and unwholesome items are placed in a designated area to be disposed of. This area was observed by the Inspector.
- Some strawberries were observed with white mold-like growths on them, and various types of whole fruit were observed to be misshapen and heavily bruised, however, volunteers were actively removing these items from the floor to be disposed of at the time of the investigation.
- All other food items were observed to be wholesome and not past the date indicated on the package.
- No evidence of pests was observed at the time of the investigation.

The complainant was not notified of the outcome of this investigation due to the fact that it was anonymous.

| Report Provided To | Delivery Method | Signature |
|---|---|---|
| Sue Ostosh | Emailed<br>sue.harvesttime@gmail.com | |

| Inspector / Inspector ID | Contact Information | Signature |
|---|---|---|
| **Heather Shupe / 230** | **ShupeH@michigan.gov**<br>**586-980-2517** | |

HARVEST TIME CHRISTIAN FELLOWSHIP

Page 2 of 2



# FOOD ESTABLISHMENT EVALUATION REPORT

MICHIGAN DEPARTMENT OF AGRICULTURE
AND RURAL DEVELOPMENT - BFA
LANSING, MICHIGAN 48909

In accordance with Act 92 of 2000, as amended

Inspection Number
**265603**
Inspection Date
**09/25/2025**

**HARVEST TIME CHRISTIAN FELLOWSHIP**
8204 E 9 MILE RD
WARREN, MI 48089-2326

## ESTABLISHMENT INFORMATION

| | | | |
|---|---|---|---|
| Entity ID: | UFE-305397 | Phone Number: | 586-758-3295 |
| Unlicensed Category: | License exempt | | |
| Variance In Place: | | Risk Prioritization: | No operation codes found |
| Establishment Description: | Harvest Time Food Distribution Center/food pantry occurring on Tuesday's and Friday's. | | |

### Training and Certifications

| Training Name | Certificate Number | Issued To | Issue Date | Expiration Date |
|---|---|---|---|---|
| Certified Food Manager | 27765328 | Curtiss Ostosh | 08/04/2025 | 08/04/2030 |

## EVALUATION INFORMATION

| | | | |
|---|---|---|---|
| Evaluation Type: | Investigation | Evaluation Date/Time In: | 09/25/2025 02:15 PM |
| Evaluation Method: | Phone | Evaluation Date/Time Out: | 09/25/2025 02:45 PM |
| FDA Inspection: | No | | |
| Person In Charge: | Curtis Ostosh | | |

## COMPLAINTS

| | | | |
|---|---|---|---|
| Complaint: | 5568 \| Non-Foodborne Illness | Complaint Received Date: | 09/23/2025 |
| Implicated Product: | Roaches in store/ moldy food | | |
| Lot Codes: | Unknown | Product Date of Purchase: | Unknown |
| UPC / SKU Number: | Unknown | Product Size / Container Type: | Unknown |
| USDA Plant Number: | Unknown | Expiration / Use By / Best By Date: | Unknown |

Details of Complaint:

The building is infested with roaches.

workers are told to give away moldy food and withhold better food for themselves.

## VIOLATIONS

No Violations Cited.

| Inspection Number | Inspection Date |
|---|---|
| **265603** | **09/25/2025** |

## EVALUATION COMMENT

The Michigan Department of Agriculture and Rural Development received the above-mentioned alleged complaint. A phone investigation was conducted on 9/25/2025 by Inspector Heather Shupe. Inspector Shupe discussed the nature of the complaint and investigation findings with Curtiss Ostosh, owner, who was not aware of the complaint. This is the 5th complaint of similar nature the Department has received since July 2023. The owner stated that they believe these complaints to be coming from specific individuals who do not agree with their religious views, and that they frequently receive similar anonymous complaints on social media.

The following items were discussed at the time of the phone investigation:

- The firm operates two days per week, in the afternoon on Tuesday and Friday. The owners pick up a majority of the food items the day of the distribution event.
- They have a small staff who are trained to remove unwholesome product from the distribution floor during set up and during the events. These food items are then discarded or set aside for composting.
- The owners have not observed any evidence of pests in the establishment. They have bait boxes set up on the outside of the building and stated they have powders and sprays that are routinely used per manufacturer instructions on the inside and outside of the building for further pest prevention. The owner stated they will text or email additional information about these chemicals on 9/26 when they are on-site. They have never observed pests trapped in the bait boxes and have only observed a few flies inside the firm that they use sticky tape fly traps to control.
- The firm does not have a regularly contracted pest control operator, as they have not observed any pest activity. They stated they would be willing to hire a PCO if necessary but have not needed to.
- The owner stated they also have multiple members of staff who are ServSafe Certified Food Managers and will send Inspector Shupe a copy of at least one of their certificates.

Mr. Ostosh emailed Inspector Shupe on Friday 9/26/2025 and stated that they utilize Ortho Home Defense Insect Killer, Spectracide Bug Stop Home Barrier, Harris Boric Acid Roach Killer Powder, and Tom Cat Rodent Bait Boxes at their facility. Mr. Ostosh also provided a copy of their ServSafe Certified Food Manager certificate.

Complainant did not request notification of complaint findings. Therefore, complainant will not be notified of the outcome of this investigation.

It shall be noted that this establishment is hoping to move into a larger facility within the upcoming year.

| Report Provided To | Delivery Method | Signature |
|---|---|---|
| Sue Ostosh | Emailed<br>sue.harvesttime@gmail.com | |

| Inspector / Inspector ID | Contact Information | Signature |
|---|---|---|
| **Heather Shupe / 230** | **ShupeH@michigan.gov**<br>**586-980-2517** | |



# FOOD ESTABLISHMENT EVALUATION REPORT

FOOD & DAIRY DIVISION
P.O. Box 30017, Lansing, MI 48909
Toll-free Phone: 800-292-3939

In accordance with Act 92 of 2000 as amended

Inspection Number
**247799**
Inspection Date
**10/22/2024**

**HARVEST TIME CHRISTIAN FELLOWSHIP**
8204 E 9 MILE RD
WARREN, MI 48089-2326

## ESTABLISHMENT INFORMATION

| | | | |
|---|---|---|---|
| Entity ID: | UFE-305397 | Phone Number: | 586-758-3295 |
| Unlicensed Category: | License exempt | | |
| Variance In Place: | | Risk Prioritization: | No operation codes found |
| Establishment Description: | Harvest Time Food Distribution Center/food pantry occurring on Tuesday's and Friday's. | | |

## EVALUATION INFORMATION

| | | | |
|---|---|---|---|
| Evaluation Type: | Investigation | Evaluation Date/Time In: | 10/22/2024 02:05 PM |
| Evaluation Method: | In person | Evaluation Date/Time Out: | 10/22/2024 02:45 PM |
| FDA Inspection: | No | | |
| Person In Charge: | Sue Ostosh | | |

## COMPLAINTS

| | | | |
|---|---|---|---|
| Complaint: | 3856 | Non-Foodborne Illness | Complaint Received Date: | 10/18/2024 |

Details of Complaint:

We received a call at the call center on this location, They stated that they are give old and rotten food to people. The location is very unsanitary and needs some over site..

This Food bank/ church was leaving our food outside, they had been cited by the city. They had animals eating food outside and made a troubled mess. The food bank currently has bed bugs and is hand out food to people. They are concerned that they could possibly transfer them to unknowing people. They have fly traps up, the place is a mess. Please let me know, the direction that you wish to go with this location. They are concerned about food safety. 8204 East 9-mile Warren mi 48089. They are throwing food in a shipping container. They feel that this could have an effect on the food safety in the heat.

## VIOLATIONS

No Violations Cited.

## EVALUATION COMMENT

A complaint was received by the department regarding this establishment on 10/18/2024 that alleges the following:

"We received a call at the call center on this location, They stated that they are give old and rotten food to people. The

HARVEST TIME CHRISTIAN FELLOWSHIP

| Inspection Number | Inspection Date |
|---|---|
| **247799** | **10/22/2024** |

location is very unsanitary and needs some over site..

This Food bank/ church was leaving our food outside, they had been cited by the city. They had animals eating food outside and made a troubled mess. The food bank currently has bed bugs and is hand out food to people. They are concerned that they could possibly transfer them to unknowing people. They have fly traps up, the place is a mess. Please let me know, the direction that you wish to go with this location. They are concerned about food safety. 8204 East 9-mile Warren mi 48089. They are throwing food in a shipping container. They feel that this could have an effect on the food safety in the heat."

Investigation:

At the time of the complaint investigation Inspector Taylor Richards spoke with the person in charge, Sue Ostosh. Mrs. Ostosh was aware that a complaint had been made and stated she believed she knew who filed the complaint, stating she believed it was an act of retaliation against the church. Mrs. Ostosh stated that no foods are left outside nor stored in the shipping container and stated that no animals had ever gotten into any of the foods. During the inspection, no foods were observed stored outside or inside the shipping container. The shipping container was observed being used to store miscellaneous items including tools and maintenance equipment. When asked about pests, Mrs. Ostosh stated the firm does not have any bed bugs or pests except for occasional flies when the doors are being opened and closed during the give away hours from 3pm-6pm on Tuesdays and Fridays. No pests were observed inside the firm during the inspection and a single fly trap was observed hanging near where the packaged foods are passed out inside the main room. The physical facility was additionally observed clean and no unsanitary conditions were observed. Regarding the section of the complaint describing old and rotten foods being given away, Mrs. Ostosh stated the establishment does not offer any past-date or rotten food to people at any time. Mrs. Ostosh stated that when the establishment receives donated foods, that the foods are sorted by volunteers and stated that any past-dated foods or foods appearing to be damaged are removed and discarded. No past-date foods were observed being held or given away and the foods appeared to be wholesome and stored in a clean, dry environment. The establishment has multiple freezers and coolers located indoors and the foods were observed frozen solid or at 41 degrees F or less. Lastly, Mrs. Ostosh stated the establishment was visited by the City of Warren due to having a tent previously set up outside with tables for a nonfood event.

Sanitation does not appear to be an issue at this facility.

Violations were not observed during the investigation.

Complainant was not notified of the outcome of this investigation as the complainant was anonymous.

| Report Provided To | Delivery Method | Signature |
|---|---|---|
| Sue Ostosh | Emailed<br>sue.harvesttime@gmail.com | |

| Inspector / Inspector ID | Contact Information | Signature |
|---|---|---|
| **Taylor Richards / 220** | **RichardsT9@michigan.gov**<br>**248-408-1874** | |



# FOOD ESTABLISHMENT EVALUATION REPORT

Inspection Number
**223145**
Inspection Date
**07/14/2023**

FOOD & DAIRY DIVISION
P.O. Box 30017, Lansing, MI 48909
Toll-free Phone: 800-292-3939

In accordance with Act 92 of 2000 as amended

---

**HARVEST TIME CHRISTIAN FELLOWSHIP**
8204 E 9 MILE RD
WARREN, MI 48089-2326

## ESTABLISHMENT INFORMATION

| | | | |
|---|---|---|---|
| Entity ID: | UFE-305397 | Phone Number: | 586-758-3295 |
| Unlicensed Category: | License exempt | | |
| Variance In Place: | | Risk Prioritization: | No operation codes found |
| Establishment Description: | Harvest Time Food Distribution Center/food pantry occurring on Tuesday's and Friday's. | | |

## EVALUATION INFORMATION

| | | | |
|---|---|---|---|
| Evaluation Type: | Investigation | Evaluation Date/Time In: | 07/14/2023 02:30 PM |
| Evaluation Method: | In person | Evaluation Date/Time Out: | 07/14/2023 03:15 PM |
| FDA Inspection: | No | | |
| Person In Charge: | Sue Ostosh | | |

## COMPLAINTS

| | | | |
|---|---|---|---|
| Complaint: | 1619 \| Non-Foodborne Illness | Complaint Received Date: | 07/11/2023 |

Details of Complaint:

Food is being delivered to this address for a food bank. The truck that holds the food is not refrigerated. This food, including meats and other perishable goods has been temperature compromised, the people handing out the food say it is good for 4 hours. Several of the canned goods are expired, some are even bloated with botulism, they discard those but still distribute the expired ones. If people are donating money to help purchase these goods, they need to see what their money is buying. I think most of the money goes in their pocket.

---

## VIOLATIONS

No Violations Cited.

## EVALUATION COMMENT

A complaint was received by the department regarding this establishment on 7/11/2023 that alleges the following:

"Food is being delivered to this address for a food bank. The truck that holds the food is not refrigerated. This food, including meats and other perishable goods has been temperature compromised, the people handing out the food say it is good for 4 hours. Several of the canned goods are expired, some are even bloated with botulism, they discard those

| Inspection Number | Inspection Date |
|---|---|
| **223145** | **07/14/2023** |

but still distribute the expired ones. If people are donating money to help purchase these goods, they need to see what their money is buying. I think most of the money goes in their pocket."

Investigation:

At the time of the complaint investigation on 7/14/2023, Inspectors Taylor Richards and Tianna Spencer spoke with the person in charge, Sue Ostosh. Mrs. Ostosh was aware that a complaint had been made and provided the Inspectors with the following information regarding the complainant:

- Mrs. Ostosh stated she believes the complainant is her ex-husband and stated that due to personal circumstances unrelated to food safety, the ex-husband has been in retaliation against the Harvest Time organization and has filed multiple complaints against Harvest Time throughout the years.
- Mrs. Ostosh stated the foods are received by Gleaners Community Food Bank and are delivered to Harvest Time on Tuesdays and Fridays around 2:30pm, with distribution occurring from 3pm-6pm. Additionally, Mrs. Ostosh stated the foods are delivered in an unrefrigerated truck, however, the foods are in transit for approximately 25 minutes and are then unloaded and immediately stocked inside the coolers and freezers located inside the Harvest Time building to then be distributed to the guests who receive the foods. Mrs. Ostosh added that if any frozen foods are received thawed and if any refrigerated foods are received out of temperature, that the foods are not distributed and are immediately disposed.

During the investigation, the Inspectors observed the firm's coolers and freezers located inside the building and the coolers and freezers were observed maintaining foods at the required temperatures. The Inspectors observed frozen food items such as whole chicken, hot franks, and breakfast sandwiches in the reach-in freezer and all were observed frozen solid with no evidence of thawing or temperature abuse. The Inspectors additionally observed refrigerated food items such as eggs and milk, and the items were observed held in refrigeration in retail display coolers which were observed maintaining temperatures of 41 degrees F or less. The firm additionally offers boxed and canned food items for distribution and all of the boxed and canned food items were observed intact and within their last recommended date of sale. No bloated or damaged canned food items were observed and Mrs. Ostosh stated that if any bloated or damaged canned food items are received that they are disposed and not distributed.

During the investigation, no foods were observed past their recommended last date of sale or with any evidence of adulteration. The Inspectors additionally observed the volunteers handling the food items and the food items were observed being handled carefully and were held in a clean, dry location.

Sanitation does not appear to be an issue at this facility.

Violations were not observed during the investigation.

Complainant was not notified of the outcome of this investigation as the complainant was anonymous.

| Report Provided To | Delivery Method | Signature |
|---|---|---|
| Sue Ostosh | Emailed<br>sue.harvesttime@gmail.com | |

| Inspector / Inspector ID | Contact Information | Signature |
|---|---|---|
| **Taylor Richards / 220** | **RichardsT9@michigan.gov**<br>**248-408-1874** | |
| **Tianna Spencer / 159** | **SpencerT1@michigan.gov**<br>**248-388-3837** | |

HARVEST TIME CHRISTIAN
FELLOWSHIP

Page 2 of 2

# Exhibit 4: Church Mission Statement



# STATEMENT OF FAITH

**THE BIBLE**
The Scriptures Inspired, both New and Old Testaments, are verbally inspired by God and are the revelation of God to Man.
  (2 Timothy 3:15-17) (Deuteronomy 29:29)

**God**
We believe that there is only one true God, eternally existing  in three persons_ Father, Son and Holy Spirit- each of Whom possesses equally all the attributes of deity and characteristics of personality.  The one true God has revealed Himself as the eternally self-existent "I AM" , The Creator of heaven and earth and the Redeemer of mankind.  (Deuteronomy 6:4), (Isaiah 43:10-11), (Matthew 28:19), (Colossians 2::9).

**The Deity of the Lord Jesus Christ**
His eternal existences with God - (Genesis 1:1), (John 1:1-3,14)
His Virgin Birth (Matthew 1`:23-25), (Luke 1:31,35)
His sinless Life- (Hebrew 7:26), 1Peter 2:22)
His Miracles -  (Act2:22, 10:38)
His work on the cross -(1Corinthians 15:3), (2Corinthians 5:21)
His Bodily Resurrection from the dead- (Matthew 28:6), (1 Corinthians 5:21)
He is exalted to the right hand of Gdd- (acts 2:33), (Philippians 2:9-11), (Hebrews 1-3)

**The Fall of Man**
Man was created with the ability to choose- Free will (Genesis 1:26-27)
However, man by choice disobeyed, God and fell not only physical death, but also spiritual death, which is separation from God- (Genesis 2:17, 3:6), (Romans 5:12-19)

**The Salvation of Man**
Man's only hope of redemption is through the Death, burial and resurrection of Jesus Christ the Son of God - (Romans 5:21), (1Corinthians 15:1-4), (Acts 4:12)

**Person of the Holy Spirit**
Holy Spirit - the third person of the Godhead who exercises the power of the Father and the Son in Creation- (Genesis 1:1-2)
And redemption by the power of the Holy Spirit - (Matthew 3:16-17), ( Acts 1:8)
The Holy Spirit bears witness that we are children of God - (Romans 8 :16)
A Helper sent from the Father, the Spirit of Truth to abide with you forever-
  (John 14:16-17, 26, 15:26, 16:13).
**The Baptism in the Holy Spirit**
All believers are entitled to and should receive the promise of the Father, the baptism in the Holy Spirit, according to the command of Lord Jesus Christ-
(Acts 1:5), (Luke 11:13)
This experience is in additional to the experience o the new birth-
(Acts 8:12-17, 10:44-46, 11:14-16
With the baptism in the Holy Spirit come such experiences as and overflowing fullness of the Spirit - (John 7:37-39), ( Acts 4:8)
Speaking in other tongues - (Acts 2:4)
A spiritual prayer language - (1Corinthians 14:2, 4)

**The Blessed Hope**
The resurrection of
 those who died (fallen asleep) in Christ will be changed - (Romans 8:23), (Titus 2:13-14), (1Corinthians 15:51, 54)

**The Millennial Reign of Christ**
The second coming of our Lord Jesus Christ is our Blessed Hope - (1 John 3:2)
The visible return of Christ with His saints to reign on earth for one thousand years - (Acts 1:11), (Revelation 17)
The Millennial reign will bring the salvation of nation of Israel - (Ezekiel 37:21-22), (Zephaniah 3:16-20), (Romans 11:25-27)
Universal peace -  (Isaiah 11:6-9),(Psalm 72:7), (Micah 4:3-4)

**A New Heaven & New Earth**
A new heaven and earth where righteousness will dwell - (2 Peter 3:13),
 (Revelation 21:22)

# Exhibit 5: FOIA request submitted by Plaintiff

Case 2:26-cv-11639-JEL-KGA   ECF No. 1   PageID.69   Filed 05/19/26   Page 69 of 119

 **David Peters <dpeters@pji.org>**

## Freedom of Information Act Request
1 message

**City Of Warren** <webmaster@cityofwarren.org>     Mon, Dec 9, 2024 at 12:16 PM
Reply-To: legaldept@cityofwarren.org
To: dpeters@pji.org

Your F.O.I.A. request has been submitted to the City of Warren Legal Department.
A response will be provided to the supplied e-mail address.

**First Name**

David

**Last Name**

Peters

**Address**

32267 Scone Street

**City**

Livonia

**State**

Michigan

**Zip Code**

48154

**Phone**

7347656212

**Email**

dpeters@pji.org

**Please Describe**

THIS IS MY SECOND REQUEST. I DID NOT RECIEVE ANY RESPONSE OR ACKNOWLEDGEMENT OF MY FIRST
REQUEST ON OR ABOUT OCTOBER 30, 2024.

1. All incident reports during the years 2023 and 2024, including complaints filed with the City of Warren, Police Reports,
and related documents concerning or related to Curtiss Ostosh or Harvest Time Christian Fellowship.

2. All incident reports, including complaints filed with the City of Warren, Police Reports, and any related documents
concerning or related to the properties located at:

A. 8204 East 9 Mile Road, Warren, MI 48089 (church)
B. 11055 Jewett, Warren, MI 48089 (house owned by the church)

Date of SECOND request: December 9, 2024

**I desire to examine the public record(s) where it(they) is(are)**

No

**I want a copy of the public record(s) sent to me.**

Yes

**Consent**

✅ Terms & Conditions

# Exhibit 6:
# Copy of City Response

Skip to main content

City of Warren Police Department

 NextRequest

## Request Visibility:  Unpublished

# Request 26-879 ☑ Closed



## Dates

**Due**

April 2, 2026

**Received**

March 26, 2026 via web

## Requester

👤 David Peters

✉ dpeters@pji.org

📍 32267 Scone Street, Livonia, MI, 48154

📞 734-765-6212

🏛 Pacific Justice Institute

## Invoices

No invoices due

## Request

1.      Each and every 'writings' as defined in MCL 15.232(l) including emails, memoranda, texts, letters, reports which refers to **Curtiss Ostosh** from January 1, 2020 to Present.

2.      Each and every 'writings' as defined in MCL 15.232(l) including emails, memoranda, texts, letters, reports which refers to **Harvest Time Christian Fellowship** from January 1, 2020 to Present

Please include all citations, tickets, letters or any type of enforcement action taken, including warnings, or any other type of action taken along with documentation and writings as requested.

Please take notice that the willful and intentional failure to comply with this request or to otherwise act in bad faith will result in appropriate legal action pursuant to MCL 15.240(b).

Show less

# Staff assigned

**Departments**

Police Department

**Point of contact**

Rosie Giolitti

## Timeline        Documents

☑ **Request closed**  Anyone with access to this request

Request Denied - See response message for further information.

March 26, 2026, 3:25pm by Staff

✉ **Message to requester** Requester + Staff

Dear Sir/Madam,

This office is in receipt of your Freedom of Information Act Request.

Your request has been denied because it is unduly burdensome and would unreasonably interfere with the duly undertaken work of this department. The Freedom of Information Act provides for access to government public records where the records sought are reasonably available. Neither the Freedom of Information Act 176 PA 442 nor MCL 15.231 - 15.246 require a department to honor a request that requires an unreasonably burdensome search or that requires the department to locate, review, redact, compile, or arrange for inspections of a vast quantity of material.

*As a result of this response you may do the following:*

- *Appeal the denial to the head of the public body pursuant to Section 10 of the Act. Appeals must be in writing, must specifically state the word "appeal", and must identify the reason or reasons for reversal of this denial. Written appeals shall be submitted to the FOIA Appeals Committee c/o City Council Office, 5460 Arden, Warren MI 48092.*

- *Seek judicial review of the denial under Section 10 of the Act.*

*You have the right to receive attorneys fees and damages as provided in Section 10 if, after judicial review, the circuit court determines that the public body has not complied with Section 5 of the Act and orders disclosure or all or a portion of a public record.*

The public summary of the City's FOIA procedures and guidelines is available free of charge from www.cityofwarren.org.

Respectfully,

William Mierzwinski, Sergeant

Records Division

March 26, 2026, 3:25pm by Staff

✉ **Message to requester**  Requester + Staff

A records request to the Warren Police Department (MI) has been created. You can track the status of your request in the portal. The response, once completed, will be available for download in the portal. Contact recordsrequest@warrenpd.org with any questions.


Please allow 5 business days for a response.

March 26, 2026, 1:56pm

🏛 **Department assignment**  Anyone with access to this request

Police Department

March 26, 2026, 1:56pm by David Peters

📂 **Request opened**  Anyone with access to this request

Request received via web

March 26, 2026, 1:56pm by David Peters

**FAQS**
**Help**
**Privacy**
**Terms**
**City of Warren FOIA Policies**

CIVICPLUS

NextRequest

Skip to main content

City of Warren Police Department

 NextRequest

## Request Visibility:  Unpublished

# Request 24-2235 ☑ Closed

✉

🖇

3 of 3

## Dates

**Due**

January 28, 2025

**Received**

December 09, 2024 via email

## Requester

👤  David Peters

✉  dpeters@pji.org

📍  32267 Scone Street, Livonia, MI, 48154

📞  734-765-6212

🏛  Pacific Justice Institute

## Invoices

## Request

"1. all incident reports during theyears 2023 and 2024, including complaints filed with the city of Warren, Police reports, and related documents concerning or related to Curtiss Ostosh or Harvest Time Chirstian Fellowship. 2. All incident reports, including complaints filed with the City of Warren, Police Reports, and any related documents concerning or related to the properties located at: 8204 East 9 Mile Road (church) and 11055 Jewett (house owned by the church)"

## Timeline | Documents

 **Request closed** Anyone with access to this request ∧

All responsive records were duplicated and released.

December 17, 2024, 3:31pm by Staff

 **Document(s) released to** Requester + Staff
**requester** ∧

No invoices due

## Staff assigned

**Departments**

Police Department

**Point of contact**

LeeAnn Witherspoon

230000510.pdf-redacted.pdf
230006545.pdf-redacted.pdf
230007870.pdf-redacted.pdf
230017152.pdf-redacted.pdf
230015880.pdf-redacted.pdf
230017335.pdf-redacted.pdf
230019810.pdf-redacted.pdf
230020058.pdf-redacted.pdf
230020329.pdf-redacted.pdf
230025941.pdf-redacted.pdf
230026748.pdf-redacted.pdf
230027082.pdf-redacted.pdf
230036810.pdf-redacted.pdf
230035493.pdf-redacted.pdf
230046587.pdf-redacted.pdf
230057632.pdf-redacted.pdf
230062997.pdf-redacted.pdf
230067713.pdf-redacted.pdf
230068206.pdf-redacted.pdf
230072736.pdf-redacted.pdf
230068620.pdf-redacted.pdf
240000804.pdf-redacted.pdf
240001016.pdf-redacted.pdf
240002096.pdf-redacted.pdf
240003587.pdf-redacted.pdf
240016644.pdf-redacted.pdf
240007802.pdf-redacted.pdf
240018130.pdf-redacted.pdf
240018113.pdf-redacted.pdf
240020018.pdf-redacted.pdf
240030470.pdf-redacted.pdf
240032805.pdf-redacted.pdf
240035433.pdf-redacted.pdf
240036247.pdf-redacted.pdf
240036770.pdf-redacted.pdf
240039059.pdf-redacted.pdf
240039092.pdf-redacted.pdf
240039966.pdf-redacted.pdf
240039601.pdf-redacted.pdf
240040411.pdf-redacted.pdf
240041264.pdf-redacted.pdf

240052910.pdf-redacted.pdf
240052615.pdf-redacted.pdf
240057295.pdf-redacted.pdf
240043119.pdf-redacted.pdf
240065477.pdf-redacted.pdf
270027453.pdf-redacted.pdf
240075986.pdf-redacted.pdf
240062621.001.pdf-redacted.pdf

December 17, 2024, 3:31pm by Staff

✉ **Message to requester**  Requester + Staff

Dear Sir/Madam,

Your records request has been fulfilled / completed. Records related to your request may be attached to this message.

**PLEASE CHECK THE BOTTOM OF THIS MESSAGE FOR A LINK TO YOUR DOCUMENTS.**

Regards,

Warren Police Department Records

December 17, 2024, 3:31pm by Staff

✉ **Message to requester**  Requester + Staff

Re: your message "Payment is requested without an amount. What amount?

Dave Peters

Request no. 24-2235

December 11, 2024, 2:47pm by David Peters"

*The Cost Itemization Sheet sent with the request for payment on 12-11-24 @ 1:15pm states balance due is $39.00*

December 12, 2024, 8:52am by Staff

✉ **Message from requester**  Requester + Staff

Payment is requested without an amount.

What amount?

Dave Peters

Request no. 24-2235

December 11, 2024, 2:47pm by David Peters

📄 **Document(s) released to** Requester + Staff
**requester**

CIS 24-2235 Total Due.xlsx-redacted.pdf

December 11, 2024, 1:15pm by Staff

✉ **Message to requester**  Requester + Staff

Dear Sir/Madam,

This office is in receipt of the Freedom of Information Request submitted on your behalf.

Please be advised that your request is granted to the extent records exist, are public records, can be identified, and are not exempt from disclosure.

Information not subject to disclosure shall be redacted from the public document pursuant to:

- MCL 15.243 Sec 13 (1) (a) Information of a personal nature
- MCL 15.243 Sec 13 (1) (d) records or information specifically described and exempted by statute
- MCL 28.211-215, combined with Executive Order 2008-17 Michigan Criminal Justice Information Systems Police Council Act
- MCL 780.818 William Van Regenmorter Crime Victim's Rights Act

- 42 USC 1320d Health Insurance Portability and Accountability Act

Available records will be duplicated after payment (see corresponding Cost Itemization Sheet) is received by the Warren Police Department. Please allow 1-2 business days for preparation of written records once payment is received. Preparation and duplication of audio, video, and/or photographs will require additional processing time. Records will be sent when all requested records have been prepared.

If payment is not received within 45 days of this notice, your request will be considered abandoned and will be closed.

**Please submit the following:**

Check or Money Order Payable to "City of Warren Police Records" - mail to:

City of Warren Police Records, 29900 Civic Center Blvd, Warren MI 48093

OR

Cash payment (exact change only) in person at the location noted above

The Public Summary of the City's FOIA Procedures and Guidelines is available free of charge from: www.cityofwarren.org

Respectfully,

Brandon Roy, Sergeant

City of Warren Police Records Division

December 11, 2024, 1:15pm by Staff

 **Message to requester**  Requester + Staff

A records request to the Warren Police Department (MI) has been created. You can track the status of your request in the portal. The response, once completed, will be available for download in the portal. Contact recordsrequest@warrenpd.org with any questions.

Please allow 5 business days for a response.

December 9, 2024, 3:19pm

 **Department assignment** Anyone with access to this request

Police Department

December 9, 2024, 3:19pm by Staff

 **Request opened** Anyone with access to this request

Request received via email

December 9, 2024, 3:19pm by Staff

**FAQS**
**Help**
**Privacy**
**Terms**
**City of Warren FOIA Policies**

CIVICPLUS
NextRequest

Skip to main content

City of Warren Police Department

  NextRequest

## Request Visibility: 👁️‍🗨️ Unpublished

# Request 25-834 ☑️ Closed



2 of 3

## Dates

**Due**

August 18, 2025

**Received**

May 08, 2025 via web

## Requester

👤 David Peters

✉️ dpeters@pji.org

📍 32267 Scone Street, Livonia, MI, 48154

📞 734-765-6212

🏛️ Pacific Justice Institute

## Invoices

## Request

"Each and every 'writings' as defined in MCL 15.232(l) including emails, memoranda, texts, letters, reports which refers to Curtiss Ostosh from January 1, 2022 to May 8, 2025."

"Each and every 'writings' as defined in MCL 15.232(l) including emails, memoranda, texts, letters, reports which refers to Harvest Time Christian Fellowship from January 1, 2022 to May 8, 2025."

Please take notice that the willful and intentional failure to comply with this request or to otherwise act in bad faith will result in appropriate legal action pursuant to MCL 15.240(b).

### Timeline          Documents

☑️ **Request closed**

Unpaid 48 days or longer

August 20, 2025, 10:24am by Staff

No invoices due

## Staff assigned

**Departments**
Police Department

**Point of contact**
Rosie Giolitti

 Requester + Staff

✉ **Message to requester**

Dear Sir/Madam,

Please be advised that pursuant to MCL 15.234, Sec 4 (14) this Freedom of Information Request is considered abandoned. This office is no longer required to fulfill the request; it has been closed.

You may initiate a new request for records via www.cityofwarrenmipolice.nextrequest.com .

The public summary of the City's FOIA procedures and guidelines is available free from charge from www.cityofwarren.org.

Respectfully,

William Mierzwinski, Sergeant

Records Division

August 20, 2025, 10:24am by Staff

 Requester + Staff

✉ **Message to requester** ^

**VERY IMPORTANT - PLEASE NOTE: This invoice ONLY outlines the page count and locating costs associated with finding emails, letters, and memoranda (if all are applicable) related to Curtiss Ostosh or Harvest Time Christian Fellowship during the provided timeframe.**

**An initial invoice was sent on May 30, 2025. Note that records will NOT be released until BOTH invoices have been paid for IN-FULL.**

**Below is the letter attached to the second invoice.**

Dear Sir/Madam,

This office is in receipt of the Freedom of Information Request submitted on your behalf.

Please be advised that your request is granted to the extent records exist, are public records, can be identified, and are not exempt from disclosure.

Information not subject to disclosure shall be redacted from the public document pursuant to:

- MCL 15.243 Sec 13 (1) (a) Information of a personal nature
- MCL 15.243 Sec 13 (1) (d) records or information specifically described and exempted by statute
- MCL 28.211-215, combined with Executive Order 2008-17 Michigan Criminal Justice Information Systems Police Council Act
- MCL 780.818 William Van Regenmorter Crime Victim's Rights Act
- MCL 780.313 Law Enforcement Body-Worn Camera Privacy Act
- 42 USC 1320d Health Insurance Portability and Accountability Act

A Cost Itemization has been prepared for your request, and was recently published to you through NextRequest.

The Cost Itemization details the total estimated fee for the records as well as any deposit required prior to preparation of the records. You may pay:

a. the total amount of the Cost Itemization which will result in your records being prepared and released as quickly as possible, or

b. the 50% deposit amount noted on the Cost Itemization which will result in your records being prepared but not released until a second notice for the remaining balance has been sent and that subsequent payment is received.

In either case, please allow 1-2 business days for preparation of written records once payment has been received. Preparation and duplication of audio, video, and/or photographs will require additional processing time. Records will be sent when all requested records have been prepared and paid for.

If payment is not received within 45 days of this notice, your request will be considered abandoned and will be closed.

**<u>Please submit the following:</u>**

Check or Money Order Payable to "City of Warren Police Records" - mail to:

City of Warren Police Records, 29900 Civic Center Blvd, Warren MI 48093

OR

Cash payment (exact change only) in person at the location noted above

The Public Summary of the City's FOIA Procedures and Guidelines is available free of charge from: www.cityofwarren.org

Respectfully,

William Mierzwinski, Sergeant

City of Warren Police Records Division

July 1, 2025, 12:19pm by Staff

📄 **Document(s) released to** Requester + Staff
**requester**

Cost Itemization 2 of 2 - FOIA #25-834 50% DEPOSIT REQUIRED.pdf

July 1, 2025, 12:19pm by Staff

✉ **Message to requester**  Requester + Staff

**VERY IMPORTANT - PLEASE NOTE: This invoice ONLY outlines the costs for the written police reports, text message(s), and digital evidence.**

**The invoice you will be receiving today does NOT include the page count or locating costs associated with finding emails, letters, and memoranda (if all are applicable) related to Curtiss Ostosh or Harvest Time Christian Fellowship during the provided timeframe, as our Computer Services Team is still actively working on that portion of the request.**

**You WILL receive a second invoice at a later date for the additional fees.**

**Below is the letter attached to the first invoice.**

Dear Sir/Madam,

This office is in receipt of the Freedom of Information Request submitted on your behalf.

Please be advised that your request is granted to the extent records exist, are public records, can be identified, and are not exempt from disclosure.

Information not subject to disclosure shall be redacted from the public document pursuant to:

- MCL 15.243 Sec 13 (1) (a) Information of a personal nature
- MCL 15.243 Sec 13 (1) (d) records or information specifically described and exempted by statute
- MCL 28.211-215, combined with Executive Order 2008-17 Michigan Criminal Justice Information Systems Police Council Act
- MCL 780.818 William Van Regenmorter Crime Victim's Rights Act
- MCL 780.313 Law Enforcement Body-Worn Camera Privacy Act
- 42 USC 1320d Health Insurance Portability and Accountability Act

A Cost Itemization has been prepared for your request, and was recently published to you through NextRequest.

The Cost Itemization details the total estimated fee for the records as well as any deposit required prior to preparation of the records. You may pay:

a. the total amount of the Cost Itemization which will result in your records being prepared and released as quickly as possible, or

b. the 50% deposit amount noted on the Cost Itemization which will result in your records being prepared but not released until a second notice for the remaining balance has been sent and that subsequent payment is received.

In either case, please allow 1-2 business days for preparation of written records once payment has been received. Preparation and duplication of audio, video, and/or photographs will require additional

processing time. Records will be sent when all requested records have been prepared and paid for.

If payment is not received within 45 days of this notice, your request will be considered abandoned and will be closed.

**Please submit the following:**

Check or Money Order Payable to "City of Warren Police Records" - mail to:

City of Warren Police Records, 29900 Civic Center Blvd, Warren MI 48093

OR

Cash payment (exact change only) in person at the location noted above

The Public Summary of the City's FOIA Procedures and Guidelines is available free of charge from: www.cityofwarren.org

Respectfully,

William Mierzwinski, Sergeant

City of Warren Police Records Division

May 30, 2025, 12:40pm by Staff

📄 **Document(s) released to requester** Requester + Staff

Cost Itemization 1 of 2 - FOIA #25-834 50% DEPOSIT REQUIRED.pdf

May 30, 2025, 12:40pm by Staff

✉ **Message to requester** Requester + Staff

Dear Sir/Madam,

This office is in receipt of the Freedom of Information Request submitted on your

behalf for public records.

Please be advised that your request is granted to the extent that records exist, are public records, can be identified, and are not exempt from disclosure.

A 10-day extension has been applied to your request pursuant to MCL 15.235, Sec. 5(2)(d).

Thank you for your patience.

The public summary of the City's FOIA procedures and guidelines is available free of charge from www.cityofwarren.org.

Respectfully,

William Mierzwinski, Sergeant

Records Division

May 15, 2025, 8:16am by Staff

## ✉ Message to requester  Requester + Staff

A records request to the Warren Police Department (MI) has been created. You can track the status of your request in the portal. The response, once completed, will be available for download in the portal. Contact recordsrequest@warrenpd.org with any questions.

Please allow 5 business days for a response.

May 8, 2025, 1:36pm

## 🏛 Department assignment   Anyone with access to this request

Police Department

May 8, 2025, 1:36pm by David Peters

## 📂 Request opened   Anyone with access to this request

Request received via web

May 8, 2025, 1:36pm by David Peters

**FAQS**
**Help**
**Privacy**
**Terms**
**City of Warren FOIA Policies**

CIVICPLUS
NextRequest

# Exhibit 7:
# Copy of Letter Regarding FOIA

**City Staff:** Keep original and provide copies of both sides of each sheet, to requestor at no charge.

CITY OF WARREN
COUNTY OF MACOMB

Detailed Cost Itemization

☐ Cost Estimate
☑ Bill

## Freedom of Information Act Request Detailed Cost Itemization

Date: __6/2/2025__   Prepared for **Request No.:** _____   Date Request Received: __5/8/2025__

☐ **GOOD FAITH DEPOSIT REQUIRED $**_____ **0.00**
*(Deposit of 50% of the Total Cost maybe required if the total exceeds $50.00)*

| | | |
|---|---|---|
| The following costs are being charged/estimated in compliance with Section 4 of the Michigan Freedom of Information Act, MCL 15.234, according to the City's FOIA Policies and Guidelines. If the City is seeking a 50% deposit prior to providing the public records sought, the estimate is itemized on this form, lines 2-7 below. | | |

**1. If all or a portion of the requested information is available on the City's website,** the City is required to tell you it is available on the website and, where practicable, include a specific webpage address where the information is available. In this case

☑ None
☐ Some
☐ All

of the requested material can be found at the following webpage(s):

_____ , _____ , _____ .

If the webpage is all the information you need, it is provided without charge. If, however, you still wish to receive a copy of material from the webpage, please let us know. The usual charge will apply if the City is required to produce copies of material from the webpage.

**2. <u>Labor</u> Cost to <u>Locate</u> Records Not on City Website:**
This is the cost of labor directly associated with the necessary searching for, locating, and examining public records in conjunction with receiving and fulfilling a granted written request. **This fee is being charged because failure to do so will result in unreasonably high costs to the City because of the nature of the request in this particular instance, specifically:** _____

The City will not charge more than the hourly wage of its lowest-paid employee capable of searching for, locating, and examining the public records in this particular instance, regardless of whether that person is available or who actually performs the labor.

These costs will be estimated and charged in **15 minute time increments**; all partial time increments must be rounded down. *If the number of minutes is less than 15, there is no charge.*

To figure the number of increments, take the *number of minutes:* __540__, divide *by 15 and round down. Enter below:*

☑ Hourly Wage Charged: $__32.71__     Charge per Increment: $__8.178__

OR

☐ Hourly Wage with Fringe Benefit Cost: $____0.00     Charge per Increment: $____0.000
Multiply the hourly wage by the percentage multiplier: __0.00__%
(*up to 50% of the hourly wage*) and add to the
hourly wage for a total per hour rate.

☐ Overtime rate charged as stipulated by Requestor *(overtime is not used to calculate the fringe benefit cost)*

| Number of increments | 2. Labor Cost |
|---|---|
| x __36__ = | $__294.39__ |

Rev. 9/2015     **FOIA Detailed Cost Itemization Form**     Page 1

### 3. Labor Cost for Copying / Duplication of Records

This is the cost of labor directly associated with duplication of publications, including making paper copies, making digital copies, or transferring digital public records to be given to the requestor on non-paper physical media or through the Internet or other electronic means as stipulated by the requestor.

This shall not be more than the hourly wage of the City's lowest-paid employee capable of necessary duplication or publication in this particular instance, regardless of whether that person is available or who actually performs the labor.

These costs will be estimated and charged in 15 **minute time increments**; all partial time increments must be rounded down. *If the number of minutes is less than one increment, there is no charge.*

☐ Hourly Wage Charged: $____ : ____          Charge per ¼ hour: $____ ` ____

OR

☐ Hourly Wage with Fringe Benefit Cost: $____ 0.00          Charge per ¼ hour: $____ 0.000
Multiply the hourly wage by the percentage multiplier: ___0.00 %
(*up to 50% of the hourly wage*) and add to the
hourly wage for a total per hour rate.

☐ Overtime rate charged as stipulated by Requestor (*overtime is not used to calculate the fringe benefit cost*)

To figure the number of increments, take the *number of minutes:*
_____,
*divide by 15, and round down. Enter below:*

**Number of increments**          **3. Labor Cost**

x ____ 0 ____ = $____ 0.00

### 4. Labor Cost for Copying/Duplicating Records Already on City's Website:

This shall not be more than the hourly wage of the City's lowest-paid employee capable of necessary duplication or publication in this particular instance, regardless of whether that person is available or who actually performs the labor. These costs will be estimated and charged in 15 **minute time increments**; all partial time increments must be rounded down. *If the number of minutes is less than 15, there is no charge.*

☐ Hourly Wage Charged: $____ - ____          Charge per Increment: $_____ . . .

OR

☐ Hourly Wage with Fringe Benefit Cost: $____ 0.00          Charge per Increment: $____ 0.000
Multiply the hourly wage by the percentage multiplier: ___0.00 %
(*up to 50% of the hourly wage*) and add to the
hourly wage for a total per hour rate.

☐ Requestor has stipulated that some / all of the requested records that are already available on the City's website be provided in a paper or non-paper physical digital medium.

☐ Overtime rate charged as stipulated by Requestor

To figure the number of increments, take the *number of minutes:*
_____,
*divide By 15, and round down. Enter below:*

**Number of increments**          **4. Web Labor Cost**

x ____ 0 ____ = $____ 0.00

### 5. Labor Cost for Separating Exempt from Non-Exempt (Redacting): Material Not on City Website

The City will not charge for labor directly associated with redaction if it knows or has reason to know that it previously redacted the record in question and still has the redacted version in its possession.

**This fee is being charged because failure to do so will result in unreasonably high costs to the City that are excessive and beyond the normal or usual amount for those services compared to the City's usual FOIA requests, because of the nature of the request in this particular instance, specifically:**_____

_____

This is the cost of labor of a **City employee**, including necessary review, directly associated with separating and deleting exempt from nonexempt information. This shall not be more than the hourly wage of the **City's lowest-paid employee** capable of separating and deleting exempt from nonexempt information in this particular instance, regardless of whether that person is available or who actually performs the labor.

These costs will be estimated and charged in **15 minute time increment**; all partial time increments must be rounded down. *If the number of minutes is less than 15, there is no charge.*

To figure the number of increments, take the *number of minutes:* 300___, *divide by 15, and round down. Enter below:*

☑ Hourly Wage Charged: $ 32.71          Charge per Increment: $ 8.178

OR

☐ Hourly Wage with Fringe Benefit Cost: $___0.00          Charge per Increment: $___0.000
Multiply the hourly wage by the percentage multiplier: ___0.00 %
(*up to 50% of the hourly wage*) and add to the
hourly wage for a total per hour rate.

☐ Overtime rate charged as stipulated by Requestor (*overtime is not used to calculate the fringe benefit cost*)

| Number of increments | 5. Labor Cost |
|---|---|
| x ___20___ = | $163.55 |

### 6. Copying / Duplication Cost:

Copying costs may be charged if a copy of a public record is requested, or for the necessary copying of a record for inspection (*for example, to allow for blacking out exempt information, to protect old or delicate original records, or because the original record is a digital file or database not available for public inspection*).

No more than the actual cost of a sheet of paper, up to maximum 10 cents per sheet for:

| | Number of Sheets: | Costs: |
|---|---|---|
| • Letter (8 ½ x 11-inch): $0.10 per sheet | x _____ = | $___0.00 |
| • Legal (8 ½ x 14-inch): $0.10 per sheet | x _____ = | $___0.00 |

No more than the actual cost of a sheet of paper for other paper sizes:

| | | |
|---|---|---|
| • Other paper sizes (single and double-sided): $___1.00 per sheet | x _____ = | $___0.00 |

Actual and most reasonably economical cost of non-paper physical digital media:

| | No. of Items: | |
|---|---|---|
| • Digital media: | | |
| __0__ Audio Disc ($___0.00 per disc) | x ___0___ = | $___0.00 |
| __0__ Photo Disc ($___0.00 per disc) | x ___0___ = | $___0.00 |
| ____ Video Disc ($__20.00 per disc) | x _____ = | $___0.00 |
| ____ Other Digital Medium __Mixed Media Drive__ ($___20.00 per item) | x _____ = | $___0.00 |

☐ *Quantity to be determined*

The cost of paper copies **must** be calculated as a total cost per sheet of paper. The fee **cannot exceed** 10 cents per sheet of paper for copies of public records made on 8-1/2- by 11-inch paper or 8-1/2- by 14-inch paper. A City **must** utilize the most economical means available for making copies of public records, including using double-sided printing, if cost saving and available.

**6. Total Copy Costs**

$___0.00

| | | |
|---|---|---|
| Rev. 9/2015 | **FOIA Detailed Cost Itemization Form** | Page 3 |

## 7. Mailing Cost:

The City will charge the actual cost of mailing, if any, for sending records in a reasonably economical and justifiable manner. Delivery confirmation is not required.

- The City *may* charge for the least expensive form of postal delivery confirmation.
- The City *cannot* charge more for expedited shipping or insurance unless specifically requested by the requestor.*

| | Number of Envelopes or Packages: | | Costs: |
|---|---|---|---|
| Actual Cost of Envelope or Packaging: $_____ | x ___0___ = | $ | 0.00 |
| Actual Cost of Postage: $_____ per stamp | x _____ = | $ | 0.00 |
| $_____ per pound | x ___0___ = | $ | 0.00 |
| $_____ per package | x ___0___ = | $ | 0.00 |
| Actual Cost (least expensive) Postal Delivery Confirmation: $_____ | x ___0___ = | $ | 0.00 |
| *Expedited Shipping or Insurance as Requested: $_____ | x ___0___ = | $ | 0.00 |

☐ * Requestor has requested expedited shipping or insurance

**7. Total Mailing Cost**

$ 0.00

## 8. Subtotal Fees Before Waivers, Discounts or Deposits:

| | |
|---|---|
| 1. Records on City Website: | *No Charge* $ 291.39 |
| 2. Labor Cost to Locate: | $ _____ |
| 3. Labor Cost for Copying: | $ 0.00 |
| 4. Labor Cost for Copying Records on Website: | $ 0.00 |
| 5. Labor Cost to Redact: | $ 163.55 |
| 6. Copying/Duplication Cost: | $ 0.00 |
| 7. Mailing Cost: | $ 0.00 |

**8. Subtotal Fees:**

**8. Subtotal Fees**

$ 457.94

## 9. Waiver: Public Interest

A search for a public record may be conducted or copies of public records may be furnished without charge or at a reduced charge if the City determines, upon request, that a waiver or reduction of the amount on line 8 above is in the public interest because searching for or furnishing copies of the public record can be considered as primarily benefiting the general public.

☐ All fees are waived **OR** ☐ All fees are reduced by: _____%

Fee Reduction (Affected by the City's Decision Re: Requested Waiver)

$ 0.00

## 10. Discount: <u>Indigence</u>

A public record search **must** be made and a copy of a public record **must** be furnished **without charge for the first $20.00 of the fee** for each request by an individual who is entitled to information under this act and who:

**1)** Submits an affidavit stating that the individual is indigent and receiving specific public assistance, **OR**

**2)** If not receiving public assistance, stating facts showing inability to pay the cost because of indigence.

If a requestor is ineligible for the discount, the public body shall inform the requestor specifically of the reason for ineligibility in the public body's written response. An individual is ineligible for this fee reduction if **ANY** of the following apply:

    (i) The individual has previously received discounted copies of public records from the same public body twice during that calendar year, **OR**

    (ii) The individual requests the information in conjunction with outside parties who are offering or providing payment or other remuneration to the individual to make the request. A public body may require a statement by the requestor in the affidavit that the request is not being made in conjunction with outside parties in exchange for payment or other remuneration.

☐ **Eligible for Indigence Discount** | ($20 Discount if eligible): | $_____ 0.00

## 11. Discount: <u>Nonprofit Organization</u>

A public record search **must** be made and a copy of a public record **must** be furnished **without charge for the first $20.00 of the fee** for each request by a nonprofit organization formally designated by the state to carry out activities under subtitle C of the federal Developmental Disabilities Assistance and Bill of Rights Act of 2000 and the federal Protection and Advocacy for Individuals with Mental Illness Act, if the request meets **ALL** of the following requirements:

    (i) Is made directly on behalf of the organization or its clients.

    (ii) Is made for a reason wholly consistent with the mission and provisions of those laws under section 931 of the Michigan Mental Health Code, 1974 PA 258, MCL 330.1931.

    (iii) Is accompanied by documentation of its designation by the state, if requested by the City.

☐ **Eligible for Nonprofit Discount** | ($20 Discount if eligible): | $_____ 0.00

## 12. Subtotal: After Discount/Waiver

$ 457.94

## 13. Deposit: Received

The City may require a good-faith deposit <u>before providing the public records to the requestor</u> **if the entire fee estimate or charge authorized under this section exceeds $50.00**, based on a good-faith calculation of the total fee. The deposit cannot exceed 1/2 of the total estimated fee. *(Percent of Deposit: 50%)*

Date paid:
_____

$_____ 0.00

| 14. Late Response <u>Labor Costs</u> Reduction | Number of Days Over Required Response Time: | Total Labor Costs |
|---|---|---|
| If the City does not respond to a written request in a timely manner as required under MCL 15.235(2), the City **must** do the following:<br><br>    (a) **Reduce the charges for labor costs** otherwise permitted by 5% for each day the City exceeds the time permitted for a response to the request, **with a maximum 50% reduction.** | 0<br><br>Multiply by 5%<br><br>= Total Percent Reduction:<br><br>0.00 | $ 0.00<br><br><br>Minus Reduction<br><br>$ 0.00<br><br>= Reduced Total Labor Costs<br><br>$ 0.00 |
| **15. Total Cost:** | | Total Cost:<br><br>$ 457.94 |
| **16. Balance Due After Deposit** | Date Balance Paid:<br><br>_____ | Balance Due After Deposit:<br><br>$ 457.94 |
| The Public Summary of the City's FOIA Procedures and Guidelines is available free of charge from:<br>Website: **www.cityofwarren.org**  Email: _____<br>Phone: _____  Address:_____<br><br>**Request Will Be Processed, But <u>Balance Must Be Paid Before</u> Copies May Be Picked Up, Delivered or Mailed** | | |

# Exhibit 8: Pictures' of Church





# Exhibit 9:
# Photographs of the Food Bank Ministry







# EXHIBIT #10
# Payment Receipts and Court Docket/Dismissals

```
STATE OF MICHIGAN                                 CASE NO:  Y034690A   D01 ON
37TH JUDICIAL DISTRICT    REGISTER OF ACTIONS
ORI500025J                                        STATUS: CLSD      10/03/25
```

```
                          JUDGE OF RECORD: SOPHIEA,ALBERT M.,   P-42401
                                  JUDGE:
CITY OF WARREN v
                                                 CTN:
     HARVEST TIME CHRISTIAN FELLOWSHIP//          TCN:
     8204 9 MILE                                  SID:
     WARREN          MI 48089           ENTRY DATE: 03/19/25
                                       OFFENSE DATE: 02/18/25  745 AM
                                        ARREST DATE:
                          VEHICLE TYPE:            VPN:
DOB: #########  SEX:    RACE:     DLN: ###############  CDL:
VEH YR:         VEH MAKE:         VIN:             PAPER PLATE:
OFFICER: KAISER/JIM                  DEPT: WARREN PROPERTY/RENTAL DI
PROSECUTOR:
VICTIM/DESC:                         VENUE: CITY OF WARREN
```

```
CNT: 01 C/M/F: C  9837                         PACC#
PROPERTY MAINTENANCE LEVEL 3 - 1ST
ARRAIGNMENT DATE:            PLEA:   ADMIT RESPON   PLEA DATE: 10/03/25
FINDINGS:  JDGMNT RNDRD   DISPOSITION DATE: 03/19/25
SENTENCING DATE:  03/19/25
      FINE        COST ST.COST    CON     MISC.    REST   TOT FINE    TOT DUE
    190.00       40.00   10.00   0.00     0.00     0.00    240.00       0.00
      JAIL SENTENCE:            PROBATION:
 VEH IMMOB START DATE:         NUMBER OF DAYS:        VEH FORFEITURE:
```

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | | INITIALS |
|------|-----------------|---|----------|
| 02/18/25 | | | |
| 01 ORIGINAL CHARGE | LVL 3 1ST | | LMC |
| PROP | | $190.00 | LMC |
| STATE COSTS - NON-TRAFFIC CIVIL INFRACTION | | $10.00 | LMC |
| 03/19/25 | | | |
| FILING DATE | 022525 | | LMC |
| 01 SCHEDULED FOR INFORMAL HEARING | | | LMC |
| | 031925  900A  SOPHIEA,ALBERT M.,   P-42401 | | LMC |
| INFORMAL HEARING HELD | LVL 3 1ST | | DMK |
| ADMIT RESPONSIBILITY | | | DMK |
| JUDGMENT RENDERED | | | DMK |
| PAYMENT DUE | 042225 | $200.00 | DMK |
| SENTENCE | | | DMK |
| 05/23/25 | | | |
| 01 14 DAY NOTICE GENERATED | LVL 3 1ST | | |
| 06/18/25 | | | |
| 01 20% LATE PENALTY | LVL 3 1ST | $40.00 | |
| 10/03/25 | | | |
| 01 MONETARY TRANSACTION | LVL 3 1ST | | AGN |
| ADMIT RESPONSIBILITY | | | AGN |
| PAYMENT | | $240.00  D254166 | AGN |
| CASE CLOSED | | | AGN |

```
           ***** END OF REGISTER OF ACTIONS ***** 10/03/25 15:48
```

```
                    37TH DISTRICT COURT
              EDWARD A. REA JUDICIAL BLDG.
          8300 COMMON RD., WARREN, MI 48093
                     (586) 574-4900
        Y034690A ON    D01 LVL 3 1ST
        10/03/25 15:46   01 TRAF/CRIM  POMN
        MULTI-RECEIPT            AGN B D254166
        10/03/25 POMN                 PL09    C
        HARVEST TIME CHRISTIAN FELLO     AMT PAID
        STATE COSTS             10.00      10.00
        PROPERTY               190.00     190.00
        20% LATE FEE            40.00      40.00
        TOTALS:                240.00     240.00

                                           0.00
        BALANCE DUE
        B 10/03/25 D254166      240.00
```

586.772.8860 • E-mail: orders@metcom-inc.com

| STATE OF MICHIGAN 37TH JUDICIAL DISTRICT ORI500025J | **REGISTER OF ACTIONS** | CASE NO: Y034690B   D01 ON STATUS: CLSD      10/03/25 |
|---|---|---|

JUDGE OF RECORD: SOPHIEA,ALBERT M.,   P-42401
JUDGE:

CITY OF WARREN v

**HARVEST TIME CHRISTIAN FELLOWSHIP//**
8204 9 MILE
WARREN      MI 48089

CTN:
TCN:
SID:
ENTRY DATE: 03/19/25
**OFFENSE DATE:** 02/18/25   745 AM
ARREST DATE:

VEHICLE TYPE:      VPN:
DOB: #########  SEX:   RACE:    DLN: ##############  CDL:
VEH YR:      VEH MAKE:      VIN:      PAPER PLATE:

| OFFICER: KAISER/JIM PROSECUTOR: VICTIM/DESC: | DEPT: WARREN PROPERTY/RENTAL DI VENUE: CITY OF WARREN |
|---|---|

**CNT: 01 C/M/F: C  9837**      PACC#
**PROPERTY MAINTENANCE LEVEL 3 - 1ST**
ARRAIGNMENT DATE:      PLEA:   ADMIT RESPON   PLEA DATE: 10/03/25
FINDINGS:  JDGMNT RNDRD   DISPOSITION DATE: 03/19/25
SENTENCING DATE:  03/19/25

| FINE | COST | ST.COST | CON | MISC. | REST | TOT FINE | TOT DUE |
|---|---|---|---|---|---|---|---|
| 190.00 | 40.00 | 10.00 | 0.00 | 0.00 | 0.00 | 240.00 | 0.00 |

JAIL SENTENCE:      PROBATION:
VEH IMMOB START DATE:      NUMBER OF DAYS:      VEH FORFEITURE:

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | | INITIALS |
|---|---|---|---|
| 02/18/25 | | | |
| 01  ORIGINAL CHARGE | LVL 3 1ST | | LMC |
|    PROP | | $190.00 | LMC |
|    STATE COSTS - NON-TRAFFIC CIVIL INFRACTION | | $10.00 | LMC |
| 03/19/25 | | | |
|    FILING DATE | 022525 | | LMC |
| 01  DUE DATE | 031925 | | LMC |
|    INFORMAL HEARING HELD | LVL 3 1ST | | DMK |
|    ADMIT RESPONSIBILITY | | | DMK |
|    JUDGMENT RENDERED | | | DMK |
|    PAYMENT DUE | 042225 | $200.00 | DMK |
|    SENTENCE | | | DMK |
| 05/23/25 | | | |
| 01  14 DAY NOTICE GENERATED | LVL 3 1ST | | |
| 06/18/25 | | | |
| 01  20% LATE PENALTY | LVL 3 1ST | $40.00 | |
| 10/03/25 | | | |
| 01  MONETARY TRANSACTION | LVL 3 1ST | | AGN |
|    ADMIT RESPONSIBILITY | | | AGN |
|    PAYMENT | | $240.00   D254167 | AGN |
|    CASE CLOSED | | | AGN |
|    MULTI: D254165-D254167 | | | AGN |
|    CASH TENDERED | | | AGN |

***** END OF REGISTER OF ACTIONS ***** 10/03/25 15:48

```
               37TH DISTRICT COURT
          EDWARD A. REA JUDICIAL BLDG.
       8300 COMMON RD., WARREN, MI 48093
                 (586) 574-4900
    Y034690B ON   D01 LVL 3 1ST
    10/03/25 15:47   01 TRAF/CRIM  POMN
    MULTI-RECEIPT              AGN B D254167
    10/03/25 POMN                    PL09   C
    HARVEST TIME CHRISTIAN FELLO    AMT PAID
    STATE COSTS           10.00        10.00
    PROPERTY             190.00       190.00
    20% LATE FEE          40.00        40.00
    TOTALS:              240.00       240.00

    BALANCE DUE                        0.00
    B 10/03/25 D254167       240.00
```

```
STATE OF MICHIGAN   |                      | CASE NO:  Y034690W   D01 ON
37TH JUDICIAL DISTRICT |  REGISTER OF ACTIONS |
ORI500025J          |                      | STATUS:  CLSD       10/03/25
```

JUDGE OF RECORD: SOPHIEA,ALBERT M.,   P-42401
JUDGE:

CITY OF WARREN v

                                                          CTN:

**HARVEST TIME CHRISTIAN FELLOWSHIP//**        TCN:
8204 9 MILE                                         SID:
WARREN        MI 48089            ENTRY DATE: 02/25/25
                                **OFFENSE DATE:** 02/18/25   745 AM
                                ARREST DATE:
                   VEHICLE TYPE:      VPN:
DOB: #########  SEX:   RACE:   DLN: ###############  CDL:
VEH YR:      VEH MAKE:     VIN:               PAPER PLATE:
OFFICER: KAISER/JIM               DEPT: WARREN PROPERTY/RENTAL DI
PROSECUTOR:
VICTIM/DESC:                       VENUE: CITY OF WARREN

**CNT: 01** C/M/F: C  9837               PACC#
**PROPERTY MAINTENANCE LEVEL 3 - 1ST**
ARRAIGNMENT DATE:         PLEA:   ADMIT RESPON   PLEA DATE: 10/03/25
FINDINGS:  JDGMNT RNDRD   DISPOSITION DATE: 03/19/25
SENTENCING DATE:  03/19/25

| FINE | COST | ST.COST | CON | MISC. | REST | TOT FINE | TOT DUE |
|---|---|---|---|---|---|---|---|
| 190.00 | 40.00 | 10.00 | 0.00 | 0.00 | 0.00 | 240.00 | 0.00 |

    JAIL SENTENCE:        PROBATION:
VEH IMMOB START DATE:      NUMBER OF DAYS:      VEH FORFEITURE:

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | | INITIALS |
|---|---|---|---|
| 02/18/25 | | | |
| 01 | ORIGINAL CHARGE       LVL 3 1ST | | LMC |
| | PROP | $190.00 | LMC |
| | STATE COSTS - NON-TRAFFIC CIVIL INFRACTION | $10.00 | LMC |
| 02/25/25 | | | |
| | FILING DATE       022525 | | LMC |
| 01 | SCHEDULED FOR INFORMAL HEARING | | LMC |
| | 031925  900A  SOPHIEA,ALBERT M.,  P-42401 | | LMC |
| | NOTICE TO APPEAR GENERATED | | LMC |
| | ALL COUNTS | | LMC |
| | 8204 9 MILE | | LMC |
| 03/19/25 | | | |
| 01 | INFORMAL HEARING HELD   LVL 3 1ST | | DMK |
| | ADMIT RESPONSIBILITY | | DMK |
| | JUDGMENT RENDERED | | DMK |
| | PAYMENT DUE       042225 | $200.00 | DMK |
| | SENTENCE | | DMK |
| 05/23/25 | | | |
| 01 | 14 DAY NOTICE GENERATED   LVL 3 1ST | | |

NAME: HARVEST TIME CHRISTIAN FELLOWSHIP//   CASE NO: Y034690W        PAGE    2

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | | INITIALS |
|---|---|---|---|
| 06/18/25 | | | |
| 01  20% LATE PENALTY | LVL 3 1ST | $40.00 | |
| 10/03/25 | | | |
| 01  MONETARY TRANSACTION | LVL 3 1ST | | AGN |
| ADMIT RESPONSIBILITY | | | AGN |
| PAYMENT | | $240.00  D254165 | AGN |
| CASE CLOSED | | | AGN |

***** END OF REGISTER OF ACTIONS ***** 10/03/25 15:48

37TH DISTRICT COURT
EDWARD A. REA JUDICIAL BLDG.
8300 COMMON RD., WARREN, MI 48093
(586) 574-4900

Y034690W ON    D01 LVL 3 1ST
10/03/25 15:46    01 TRAF/CRIM  POMN
MULTI-RECEIPT              AGN B D254165
10/03/25 POMN                  PL09    C
HARVEST TIME CHRISTIAN FELLO    AMT PAID
STATE COSTS              10.00      10.00
PROPERTY                190.00     190.00
208 LATE FEE             40.00      40.00
TOTALS:                 240.00     240.00

                                    0.00
BALANCE DUE
B 10/03/25 D254165         240.00

586.772.8860 • E-mail: orders@metcom-inc.com



37TH DISTRICT COURT
EDWARD A. REA JUDICIAL BLDG.
8300 COMMON RD., WARREN, MI 48093
(586) 574-4900

10/03/25 15:47
MULTI: D254165-D254167        AGN B
                                           AMT PAID
CASH TENDERED                               720.00
TOTAL PAID:                                 720.00

```
STATE OF MICHIGAN                                 CASE NO:   Y034460A    D01 ON
37TH JUDICIAL DISTRICT    REGISTER OF ACTIONS
ORI500025J                                        STATUS:  CLSD       10/03/25
```

```
                              JUDGE OF RECORD: SOPHIEA,ALBERT M.,    P-42401
                                      JUDGE:
CITY OF WARREN v
                                                      CTN:
    OSTOSH/CURTISS/JAMES                               TCN:
    8204 E NINE MILE RD                                SID:
    WARREN        MI 48089            ENTRY DATE: 10/22/24
                                    OFFENSE DATE: 10/01/24
                                     ARREST DATE:
                              VEHICLE TYPE:          VPN:
DOB: #########  SEX: M  RACE:   DLN: ##############  CDL: U
VEH YR:         VEH MAKE:        VIN:                PAPER PLATE:
OFFICER: HAGBERG/ROBERT                 DEPT: WARREN PROPERTY/RENTAL DI
PROSECUTOR:
VICTIM/DESC:                            VENUE: CITY OF WARREN
```

```
CNT: 01 C/M/F: C  9838                        PACC#
PROPERTY MAINTENANCE LEVEL 3 - 2ND
ARRAIGNMENT DATE:            PLEA:    ADMIT RESPON   PLEA DATE: 10/03/25
FINDINGS:  DEFAULT JGMT   DISPOSITION DATE: 11/20/24
SENTENCING DATE:  11/20/24
      FINE       COST ST.COST     CON     MISC.    REST    TOT FINE    TOT DUE
   390.00      80.00   10.00     0.00    0.00     0.00     480.00       0.00
        JAIL SENTENCE:          PROBATION:
   VEH IMMOB START DATE:        NUMBER OF DAYS:         VEH FORFEITURE:
```

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | | INITIALS |
|---|---|---|---|
| 10/01/24 | | | |
| 01 | ORIGINAL CHARGE         LVL 3 2ND | | LMC |
| | PROP | $390.00 | LMC |
| | STATE COSTS - NON-TRAFFIC CIVIL INFRACTION | $10.00 | LMC |
| 10/22/24 | | | |
| | FILING DATE          102224 | | LMC |
| 01 | SCHEDULED FOR INFORMAL HEARING | | LMC |
| | 112024  900A  SOPHIEA,ALBERT M.,  P-42401 | | LMC |
| 11/20/24 | | | |
| 01 | INFORMAL HEARING HELD    LVL 3 2ND | | LMC |
| | DEFAULT JUDGMENT | | LMC |
| | FTA | | LMC |
| | SENTENCE | | LMC |
| 11/21/24 | | | |
| 01 | DEFAULT JUDGMENT GENERATED | | LMC |
| | LVL 3 2ND | | LMC |
| 12/23/24 | | | |
| 01 | 14 DAY NOTICE GENERATED   LVL 3 2ND | | |
| 01/16/25 | | | |
| 01 | 20% LATE PENALTY         LVL 3 2ND | $80.00 | |

NAME: OSTOSH/CURTISS/JAMES                     CASE NO: Y034460A        PAGE    2

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | | | INITIALS |
|------|-------------------------------|---|---|----------|
| 10/03/25 | | | | |
| 01 MONETARY TRANSACTION | LVL 3 2ND | | | AGN |
| ADMIT RESPONSIBILITY | | | | AGN |
| PAYMENT | | $480.00 | D254168 | AGN |
| CASH TENDERED | | | | AGN |
| CASE CLOSED | | | | AGN |

***** END OF REGISTER OF ACTIONS ***** 10/03/25 15:54

```
                 37TH DISTRICT COURT
              EDWARD A. REA JUDICIAL BLDG.
           8300 COMMON RD., WARREN, MI 48093
                   (586) 574-4900
        Y034460A ON    D01 LVL 3 2ND
        10/03/25 15:54   01 TRAF/CRIM  POMN
        CASH TRANSCTN                 AGN B D254168
        10/03/25 POMN                        PL09    C
        OSTOSH/CURTISS/JAMES                AMT PAID
        STATE COSTS            10.00          10.00
        PROPERTY             390.00          390.00
        20% LATE FEE          80.00           80.00
        TOTALS:             480.00          480.00

        CASH TENDERED                        480.00
        TOTAL PAID:                          480.00

        BALANCE DUE                            0.00
        B 10/03/25 D254168       480.00
```

586.772.8860 • E-mail: orders@metcom-inc.com

# EXHIBIT #11
# Dismissal of Appeal

STATE OF MICHIGAN

SIXTEENTH JUDICIAL CIRCUIT COURT

CITY OF WARREN,

                Petitioner-Appellee,

vs.                                            Case No. 2025-2202-AA

CURTISS OSTOSH,

                Respondent-Appellant;

and

CITY OF WARREN,

                Petitioner-Appellee,

vs.                                            Case No. 2025-2203-AA

HARVEST TIME CHRISTIAN FELLOWSHIP,

                Respondent-Appellant.

_____/

## OPINION AND ORDER

Petitioner City of Warren moves to dismiss respondent Curtiss Ostosh's appeal.

### I. BACKGROUND

#### A. Case No. 2025-2202-AA

Respondent Curtiss Ostosh appeals as of right from an *Order Denying Respondent's Motion for Relief from Judgment or to Clarify Judgment* signed May 7, 2025 in the City of Warren Administrative Hearing Bureau, File No. 0344690WAB.[1]

---

[1]Ostosh's first name was misspelled in the case caption of the Claim of Appeal. The error has been corrected. MCR 2.612(A)(1).

On July 3, 2025, Ostosh moved to consolidate this matter with *City of Warren v Harvest Time Christian Fellowship,* Sixteenth Judicial District Court, Case No. 2025-2203-AA, and for a stay of proceedings. Ostosh asserted the two cases involved the same controlling issues of law and fact. In response, the City of Warren averred the appeal was untimely and should be dismissed. An *Order of Granting Motion to Consolidate; Denying Motion to Stay; Adjourning Motion to Dismiss* was signed August 24, 2025.

The motion to dismiss is now ripe for adjudication.

### B. Case No. 2025-2203-AA

Harvest Time Christian Fellowship appeals as of right from an *Order Denying Respondent's Motion for Relief from Judgment or to Clarify Judgment* signed May 7, 2025 in the City of Warren Administrative Hearing Bureau, File No. 0344690WAB.

A *Notice of Intent to Dismiss Appeal* was signed August 8, 2025 given the failure to secure a copy of the record on appeal.[2]

### II. ANALYSIS

The City of Warren notes its Administrative Hearings Bureau found Ostosh responsible for blight violations in a Final Decision and Order dated March 26, 2025. Instead of cleaning up the property and paying the assessed fines, Ostosh filed an untimely motion for reconsideration that was denied May 7, 2025. This appeal, filed well beyond the 28-day period from the Final Decision and Orders, is untimely. Ostosh also failed to secure an appeal bond as required by MCL 117.4q(18). Hence, the City of Warren argues Ostosh's appeal should be dismissed.

In response, Ostosh avers he is the pastor of Harvest Time Christian Fellowship. He filed this appeal 21 days after the denial of his motion for reconsideration. He has also had a difficult

---

[2]The record on appeal has yet to be filed.

2

time finding a bondsman given the low amount of the fines. Thus, Ostosh argues the City of

Warren's motion should be denied.

MCR 7.104 provides in pertinent part:

(A) The time limit for an appeal of right is jurisdictional. See MCR 7.103(A). Time is computed as provided in MCR 1.108. An appeal of right to the circuit court must be taken within:
(1) 21 days or the time allowed by statute after entry of the judgment, order, or decision appealed, or
(2) 21 days after the entry of an order denying a motion for new trial, a motion for rehearing or reconsideration, or a motion for other relief from the judgment, order, or decision, if the motion was filed within:
(a) the initial 21-day period, or
(b) further time the trial court or agency may have allowed during that 21-day period.
* * *
(D) The appellant shall file the following documents with the claim of appeal:
* * *
(4) if the appellant has filed a bond, a true copy of the bond;
(5) proof that money, property, or documents have been delivered or deposited as required by law....

MCL 117.4q provides in pertinent part:

(16) Any final decision by a hearing officer that a blight violation does or does not exist constitutes a final decision and order for purposes of judicial review and may be enforced in the same manner as a judgment entered by a court of competent jurisdiction.
(17) A party may file an appeal within 28 days after entry of the decision and order by the hearing officer. An appeal of a final decision and order of an administrative hearing officer is to the circuit court.
(18) An alleged violator who appeals a final decision and order to circuit court shall post with the administrative hearings bureau, at the time the appeal is taken, a bond equal to the fine and costs imposed.

The Final Decision and Order finding Ostosh responsible for two counts of blight violation

is dated March 26, 2025. While the limited record does not establish when Ostosh filed his motion

for reconsideration, the *Order Denying Respondent's Motion for Relief from Judgment or to*

*Clarify Judgment* is dated May 7, 2025. Ostosh filed his appeal 21 days later on May 28, 2025.

3

Consequently, Ostosh's appeal is ostensibly timely.

However, Ostosh's claim of appeal misrepresented the necessity of filing a bond. He checked the box for "Bond on appeal is...not required" despite the plain language of MCL 117.4q(18).

Significantly, Ostosh's contention that he has had difficulty finding a bondsman to post a bond given the low amount of the fines is not supported any evidence. Notwithstanding, given Ostosh's claim that he "is willing and able to pay the entire fine amounts at this time," he clearly could—and should—have posted a cash bond. Ostosh's failure to do so violated MCR 7.104(D)(4) and/or (5).

### III. CONCLUSION

For the reasons set forth above, petitioner City of Warren's motion to dismiss respondent Curtiss Ostosh's appeal is GRANTED.

Accordingly, Ostosh's appeal is DISMISSED, with prejudice. MCR 2.116(I)(1).

This *Opinion and Order* resolves the last pending claim in Case No. 2025-2202-AA, only, and closes this case. MCR 2.602(A)(3).

IT IS SO ORDERED.

Hon. Diane M. Druzinski, Circuit Court Judge

Date: OCT 17 2025

DMD/ac

cc:  Mary Michaels, Esq./Caitlin Murphy, Esq.
     David C. Peters, II, Esq.

4